02-112 (Rev. 02/94)

ATPSC.FRM

14.  Continuation of amended provisions.

**Original – 11/1/04 through 6/30/08**
FY05, 11/1/04 – 6/30/05, $57.15 x 750 beds x 242 days = $10,372,725.00
FY06, 7/1/05 – 6/30/06, $58.29 (est) x 750 beds x 365 days = $15,956,887.50
FY07, 7/1/06 – 6/30/07, $59.46 (est) x 750 beds x 365 days = $16,277,175.00
FY08, 7/1/07 – 6/30/08, $60.65 (est) x 750 beds x 365 days = $16,648,425.00
                                                     Total = $59,255,212.50

*Summary of Changes:*

**Amendment #1**

CPI increase from $57.15 to $58.20, add additional chaplain to contract $50,000/per year, ($150,000 for base contract). Increase FY06 encumbrance by $187,792.50. Revise language in Section 4.08(M) re: UA testing. Increase base contract by = +$337,792.50

**Amendment #2**

Allow up to 90 prisoners to be moved to Eloy. Increase FY06 encumbrance by adding 8,306 prisoner days = +$483,409.20

**Amendment #3**

CPI increase from $58.20 to $59.34. Allow prisoners to be moved to Red Rock. Increase FY07 encumbrance by = +$3,216,015.00

**Amendment #4**

Increase FY07 encumbrance by adding 22,695 prisoner days = +$1,346,721.30

**Amendment #5**

CPI increase from $59.34 to $60.49. Increase FY08 encumbrance by = +$3,326,981.00

**Amendment #6**

Add a new Article (Article 15) to Appendix A, General Provisions. No other changes.

---

AMENDMENT TO PROFESSIONAL SERVICE CONTRACT FOR
ENTRY DEFINITIONS

1. Agency assigned contract number for tracking, reference, and billing.
2. Authority to Seek Professional Services (ASPS) number assigned by Department of Administration (DOA).
3. Optional renewal? Yes or no. Years remaining not including this renewal.
4. Financial coding assigned by the agency for billing purposes.
5. Encumbrance number assigned to this contract by the agency.
6. Amendment number. How many to date for this contract including this one?
7. Department.
8. Contractor's name and address.
9. Original period of performance, including previous amendments.
10. Amended period of performance of this document.
11. Total date not including this amendment.
12. Amount of this amendment.
13. New total not to exceed including this amendment.
14. This section must contain all material changes from the contract such as the new total not to exceed amount and the new period of performance. If no change is being made, write "same." This section also requests the number of years, months and days this contract is either increased or decreased by.
16. Contractor's name, signature, and address.
17. Your division project director's name and signature.

ATPSC.FRM/2

## Facility Management Agreement Executive Approval Form
(Form must be filled out completely)

**This form should be the cover page for all new contracts and forwarded to the BDSG Administrative Assistant (<u>with final contract</u>) for distribution**

Please check appropriate box:

☐ Proposal          ☐ Final Contract          X Contract Modification/Amendment

Description of Agreement / RFP / Amendment submitted for approval: **Alaska at Red Rock**

This Amendment incorporates a new section into the contract to provide that the contract shall not be interpreted to confer rights, entitlements or benefits on anyone except the parties to the Contract. This language is intended to help in defending against claims and breach of contract lawsuits brought by inmates who assert that they are third-party beneficiaries to the contract between CCA and the State of Alaska.

Per Diem (If tiered, please specify): The per diem is not affected.

Contract Base Year(s): _____

Contract Option Year(s): _____

Date Submitted to Executive Board: _____

By his/her signature below, the Customer Relations Manager represents that he or she has submitted the Agreement / RFP / Amendment to the Board with supporting summaries and financials as required by Facility Support Center Policy 1-2.

_____
Senior Director, Customer Relations

**Reviewed and Approved by:**

_____
Vice President, Research, Contracts and Proposals

_____
Vice President, Operations

_____
Vice President, Finance

_____
Assistant General Counsel

**Executive Management Signatures of Approval**

_____          _____
Senior Vice President, Business Development    Chief Corrections Officer

_____          _____
Senior Vice President, Business Development    Chief Financial Officer

_____          _____
Chief Human Resources Officer                  Chief Executive Officer

_____
General Counsel

Revised 8.30.07

Statement of Facts
Exhibit 1 - page 17 of 89

07/01/98 WED 07:47 FAX 907 269 7345   DEPT OF CORRECTION ADMIN → DIRECTOR   ☒003
JUL. 1.1998 9:46AM  S. C. A. LEGAL   DEPT OF CORRECTION ADMIN   NO. 3222  P. 3

Case 3:03-cv-00266-JWS   Document 77-3   Filed 05/30/2008   Page 4 of 15

Dept. of Correction
Central Compliance
RECEIVED
JUL 6 1998

# STANDARD AGREEMENT FORM

| 1. Agency Contract Number 2094863 | 2. ASPS No. 99-0001 | 3. Financial Coding 20061510-15975fed,70gfm,65gf-7690025 | 4. Agency Assigned Encumbrance Number -2094863 |
|---|---|---|---|
| 5. Vendor Number | | 6. Alaska Business License Number- BL: 217374 (9200) | |

| 7. Department of Corrections | Division Institutions | hereafter the State |
|---|---|---|

8. and,
Corrections Corporation of America, Inc., dba Central Arizona Detention Center (CADC)       hereafter the Contractor

| Mailing Address | Street or P.O. Box 10 Burton Hills Blvd., Nashville, Tennessee, 37215 | City | State | ZIP+4 |
|---|---|---|---|---|

9. **ARTICLE 1.** Appendices: Appendices referred to in this contract and attached to it are considered part of it.

   **ARTICLE 2.** Performance of Services
   2.1 Appendix A (General Provisions), Articles 1 though 14, governs the performance of services under this contract.
   2.2 Appendix B sets forth the liability and insurance provisions of this contract.
   2.3 Appendix C sets forth the services to be performed by the contractor.

   **ARTICLE 3.** Period of Performance: The period of performance for this contract begins __June 30, 1998__ and ends __April 30, 1999__

   **ARTICLE 4.** Considerations:
   4.1 In full consideration of the contractor's performance under this contract, the State shall pay the contractor a sum not to exceed __$10,282,040.00__ in accordance with the provisions of Appendix D.
   4.2 When billing the State, the contractor shall refer to the Authority Number or the Agency Contract Number and send the billing to:

| 10. Department of Corrections | Attention: Division of Institutions |
|---|---|
| Mailing Address 4500 Diplomacy Drive, Suite 207, Anchorage, AK 99508 | Attention: Director of Institutions |

| Name of Firm Corrections Corporation of America, Inc. | 13. CERTIFICATION: I certify that the facts herein and on supporting documents are correct, that this voucher constitutes a legal charge against funds and appropriations cited, that sufficient funds are encumbered to pay this obligation, or that there is a sufficient balance in the appropriation cited to cover this obligation. I am aware that to knowingly make or allow false entries or alterations on a public record, or knowingly destroy, mutilate, suppress, conceal, remove or otherwise impair the variety, legibility or availability of a public record constitutes tampering with public records punishable under AS 11.56.815 - 820. Other disciplinary action may be taken up to and including dismissal. |
|---|---|
| Signature of Authorized Representative _[signature]_   Date 30 June 98 | |
| Typed or Printed Name of Authorized Representative Doctor R. Crants | |
| Title Chairman and CEO   Employer ID No. (FEIN) or SSN 62-1156308 | |
| Department/Division Corrections / Institutions   Date 7/1/98 | Signature of Head of Contracting Agency or designee _[signature]_   Date 7/1/98 |
| Signature of Project Director _[signature]_ | Typed or Printed Name Dwayne Peeples |
| Typed or Printed Name of Project Director Bill Parker | Title Director, Administrative Services |
| Title Deputy Commissioner | |

Notice: This contract has no effect until signed by the head of contracting agency or designee.

02-093 (02/94)

Ex 1b.

Statement of Facts
Exhibit 1 - page 19 of 89

# STANDARD AGREEMENT FORM

| 1. Agency Contract Number | 2. ASPS No. | 3. Financial Coding | 4. Agency Assigned Encumbrance Number |
|---|---|---|---|
| 2094863 | 99-0001 | 20661510-15975fed,70gfm,65gf-7690025 | 2094863 |

| 5. Vendor Number | 6. Alaska Business License Number |
|---|---|
| | BL: 217374 (9200) |

This contract is between the State of Alaska

| 7. Department of Corrections | Division Institutions | hereafter the State |
|---|---|---|

8. and,
Corrections Corporation of America, Inc., dba Central Arizona Detention Center (CADC)                    hereafter the Contractor

| Mailing Address | Street or P.O. Box | City | State | ZIP+4 |
|---|---|---|---|---|
| | 10 Burton Hills Blvd., Nashville, Tennessee, 37215 | | | |

9. ARTICLE 1. Appendices: Appendices referred to in this contract and attached to it are considered part of it.

ARTICLE 2. Performance of Service:
2.1 Appendix A (General Provisions), Articles 1 though 14, governs the performance of services under this contract.
2.2 Appendix B sets forth the liability and insurance provisions of this contract.
2.3 Appendix C sets forth the services to be performed by the contractor.

ARTICLE 3. Period of Performance: The period of performance for this contract begins __June 30, 1998__ and ends __April 30, 1999__.

ARTICLE 4. Considerations:
4.1 In full consideration of the contractor's performance under this contract, the State shall pay the contractor a sum not to exceed __$10,282,040.00__ in accordance with the provisions of Appendix D.
4.2 When billing the State, the contractor shall refer to the Authority Number or the Agency Contract Number and send the billing to:

| 10. Department of Corrections | Attention: Division of Institutions |
|---|---|
| Mailing Address 4500 Diplomacy Drive, Suite 207, Anchorage, AK 99508 | Attention: Director of Institutions |

**Contractor**

| Name of Firm Corrections Corporation of America, Inc. | 13. CERTIFICATION: I certify that the facts herein and on supporting documents are correct, that this voucher constitutes a legal charge against funds and appropriations cited, that sufficient funds are encumbered to pay the obligation, or that there is a sufficient balance in the appropriation cited to cover this obligation. I am aware that to knowingly make or allow false entries or alterations on a public record, or knowingly destroy, mutilate, suppress, conceal, remove or otherwise impair the variety, legibility or availability of a public record constitutes tampering with public record punishable under AS 11.56.815 - 820. Other disciplinary action may be taken up to and including dismissal. |
|---|---|
| Signature of Authorized Representative / Date | |
| Typed or Printed Name of Authorized Representative Doctor R. Crants | |
| Title Chairman and CEO / Employer ID No. (EIN) or SSN 62-1156308 | |

**Contracting Agency**

| Department/Division Corrections / Institutions | Date | Signature of Head of Contracting Agency or designee | Date |
|---|---|---|---|

| Signature of Project Director | Typed or Printed Name Dwayne Peeples |
|---|---|
| Typed or Printed Name of Project Director Bill Parker | Title Director, Administrative Services |
| Title Deputy Commissioner | |

APPENDIX A
GENERAL PROVISIONS

**Article 1. Definitions.**
1.1 In this contract and appendices, "Project Director" or "Agency Head" or "Procurement Officer" means the person who signs this contract on behalf of the Requesting Agency and includes a successor or authorized representative.
1.2 "State Contracting Agency" means the department for which this contract is to be performed and for which the Commissioner or Authorized Designee acted in assigning this contract.

**Article 2. Inspection and Reports.**
2.1 The department may inspect, in the manner and at reasonable times it considers appropriate, all the contractor's facilities and activities under the contract.
2.2 The contractor shall make progress and other reports in the manner and at the times the department reasonably requires.

**Article 3. Disputes.**
3.1 Any Dispute concerning a question of fact arising under this contract which is not disposed of by mutual agreement shall be decided in accordance with AS 36.30.620-632

**Article 4. Equal Employment Opportunity.**
4.1 The contractor may not discriminate against any employee or applicant for employment because of race, religion, color, national origin, or because of age, physical handicap, sex marital status, changes in marital status, pregnancy or parenthood when the reasonable demands of the position(s) do not require distinction on the basis of age, physical handicap, sex marital status, changes in marital status, pregnancy, or parenthood. The contractor shall take affirmative action to insure that the applicants are considered for employment and that employees are treated during employment without unlawful regard to their race, color, religion, national origin, ancestry, physical handicap, age, sex, marital status, changes in marital status, pregnancy or parenthood. This action must include, but need not be limited to the following: employment, upgrading, demotion, transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation and selection for training including apprenticeship. The contractor shall post in conspicuous places, available to employees and applicants for employment, notices setting out the provisions of this paragraph.
4.2 The contractor shall state, in all solicitations or advertisements for employees to work on State of Alaska contract jobs, that it is an equal opportunity employer and that all qualified applicants will receive consideration for employment without regard to race, religion, color, national origin, age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood.
4.3 The contractor shall send to each labor union or representative of workers with which the contractor has a collective bargaining agreement or other contract or understanding a notice advising the labor union or workers' compensation representative of the contractor's commitments under this article and post copies of the notice in conspicuous places available to all employees and applicants for employment.
4.4 The contractor shall include the provisions of this article in every contract and shall require the inclusion of these provisions in every contract entered into by any of its subcontractors, so that those provisions will be binding upon each subcontractor. For the purpose of inducing those provisions in any contract or subcontract, as required by this contract, "contractor" and "subcontractor" may be changed to reflect appropriately the name or designation of the parties of the contract or subcontract.
4.5 The contractor shall cooperate fully with State efforts which seek to deal with the problem of unlawful discrimination, and with all other State efforts to guarantee fair employment practices under this contract and promptly comply with all requests and directions from the State Commission for Human Rights or any of its officers or agents relating to prevention of discriminatory employment practices.
4.6 Full cooperation in paragraph 4.5 includes, but is not limited to, being a witness in any proceeding involving questions of unlawful discrimination if that is requested by any official or agency of the State of Alaska; permitting employees of the contractor to be witnesses or complainants in any proceeding involving questions of unlawful discrimination if that is requested by any official or agency of the State of Alaska; participating in meetings; submitting periodic reports on the equal employment aspects of present and future employment; assisting inspection of the contractor's facilities; and promptly complying with all State directives considered essential by any office or agency of the State of Alaska to insure compliance with all federal and State laws, regulations, and policies pertaining to the prevention of discriminatory employment practices.
4.7 Failure to perform under this article constitutes a material breach of the contract.

**Article 5. Termination.**
The Project Director, by written notice, may terminate this contract in whole or in part, when it is in the best interest of the State. The State is liable only for payment in accordance with the payment provisions of this contract for services rendered before the effective date of termination.

**Article 6. No Assignment or Delegation.**
The contractor may not assign or delegate this contract, or any part of it, or any right to any of the money to be paid under it, except with the written consent of the Project Director and the Agency Head.

**Article 7. No Additional Work or Material.**
No claim for additional services, not specifically provided in this contract, performed or furnished by the contractor, will be allowed, nor may the contractor do any work or furnish any material not covered by the contract unless the work or material is ordered in writing by the Project Director and approved by the Agency Head.

**Article 8. Independent Contractor.**
The contractor and any agents and employees of the contractor act in an independent capacity and are not officers or employees or agents of the State in the performance of this contract.

**Article 9. Payment of Taxes.**
As a condition of performance of this contract, the contractor shall pay all federal, State, and local taxes incurred by the contractor and shall require their payment by any Subcontractor or any other persons in the performance of this contract. Satisfactory performance of this paragraph is a condition precedent to payment by the State under this contract.

**Article 10. Ownership of Documents.**
All designs, drawings, specifications, notes, artwork, and other work developed in the performance of this agreement are produced for hire and remain the sole property of the State of Alaska and may be used by the State for any other purpose without additional compensation to the contractor. The contractor agrees not to assert any rights and not to establish any claim under the design patent or copyright laws. The contractor, for a period of three years after final payment under this contract, agrees to furnish and provide access to all retained materials at the request of the Project Director. Unless otherwise directed by the Project Director, the contractor may retain copies of all the materials.

**Article 11. Governing Law.**
This contract is governed by the laws of the State of Alaska. All actions concerning this contract shall be brought in the Superior Court of the State of Alaska.

**Article 12. Conflicting Provisions.**
Unless specifically amended and approved by the department of Law the General Provisions of this contract supersede any provisions in other appendices.

**Article 13. Officials Not to Benefit.**
Contractor must comply with all applicable federal or State laws regulating ethical conduct of public officers and employees.

**Article 14. Covenant Against Contingent Fees.**
The contractor warrants that no person or agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, contingent fee, or brokerage except employees or agencies maintained by the contractor for the purpose of securing business. For the breach or violation of this warranty, the State may terminate this contract without liability or in its discretion deduct from the contract

Statement of Facts
Exhibit 1 - page 21 of 89

# TABLE OF CONTENTS

**ARTICLE 1**
    **DEFINITIONS** ................................................................. 7

**ARTICLE 2**
    **TERM OF THE CONTRACT** ............................................. 10
    Section 2.1 Term ............................................................... 10

**ARTICLE 3**
    **PRISONERS** ..................................................................... 10
    Section 3.1 Prisoner Housing ............................................. 10
    Section 3.2 Assignment of Prisoners .................................. 10
    Section 3.3 Delivery of Prisoners ....................................... 11
    Section 3.4 Return of Prisoners .......................................... 11
    Section 3.5 Transfer of Prisoners between Contractor's Facilities ........ 11
    Section 3.6 Transfer of Funds ............................................ 11

**ARTICLE 4**
    **OPERATION OF FACILITY** ............................................ 12
    Section 4.1 General Duties ................................................ 12
    Section 4.2 Admitting and Booking ................................... 14
    Section 4.3 Safety and Emergency Procedures ................... 14
    Section 4.4 Sanitation/Hygiene/Accommodations .............. 15
    Section 4.5 General Library ............................................... 15
    Section 4.6 Minimum Program Requirements ................... 15
    Section 4.7 Medical: Counseling/Mental Health ................ 23
    Section 4.8 Medical/Dental ................................................ 24
    Section 4.9 Food Service ................................................... 30
    Section 4.10 Laundry ......................................................... 30
    Section 4.11 Transportation ............................................... 30
    Section 4.12 Prisoner Commissary ..................................... 31
    Section 4.13 Mail ............................................................... 31
    Section 4.14 Telephones .................................................... 31
    Section 4.15 Religion ......................................................... 31
    Section 4.16 Facility Supplies ............................................ 31
    Section 4.17 Grievance Procedure ...................................... 31
    Section 4.18 Security and Control ...................................... 33
    Section 4.19 Visitation ....................................................... 33
    Section 4.20 Law Library; Access to Courts and Legal Materials ........ 33
    Section 4.21 Discipline ....................................................... 34
    Section 4.22 Use of Force ................................................... 35

Section 4.23  Good Time .................................................. 36
Section 4.24  Sentence Computation ......................................... 36
Section 4.25  Records and Reports .......................................... 36
Section 4.26  Return of Prisoners to State .................................. 37
Section 4.27  Prisoner Work ................................................ 38
Section 4.28  Classification ............................................... 38
Section 4.29  Hearings ..................................................... 40
Section 4.30  Escape ....................................................... 40
Section 4.31  Death of a Prisoner .......................................... 41
Section 4.32  Public Information and Publicity ............................. 41
Section 4.33  Legal Proceedings ............................................ 41
Section 4.34  Inspections .................................................. 42
Section 4.35  Civil Rights Act ............................................. 42
Section 4.36  Americans with Disabilities Act .............................. 42
Section 4.37  Drug Free Workplace .......................................... 42
Section 4.38  Contract Monitor or Contract Action Officer .................. 42
Section 4.39  Audit Requirements ........................................... 42
Section 4.40  Accounting Procedures ........................................ 43
Section 4.41  Policy and Procedures ........................................ 43

ARTICLE 5
    EMPLOYEES ............................................................. 43
    Section 5.1  Independent CADC .......................................... 43
    Section 5.2  Personnel ................................................. 43
    Section 5.3  Correctional Officer Certification Level .................. 44

ARTICLE 6
    COMPENSATION AND ADJUSTMENTS .......................................... 44
    Section 6.1  Management Payment ........................................ 44
    Section 6.2  Billings .................................................. 45
    Section 6.3  Billing Disputes .......................................... 45
    Section 6.4  Change in Scope of Services ............................... 45
    Section 6.5  Failure to Agree on Compensation for Additional Services .. 46
    Section 6.6  Taxes ..................................................... 46
    Section 6.7  Utilities ................................................. 46

ARTICLE 7
    INDEMNIFICATION AND INSURANCE ......................................... 46
    Section 7.1  Indemnification ........................................... 46
    Section 7.2  Insurance ................................................. 47

ARTICLE 8
    DEFAULT AND DETERMINATION ............................................. 48

Section 8.1  Immediate Compliance ................................................. 48
Section 8.2  Breach .................................................................. 48
Section 8.3  State Breach ............................................................ 49
Section 8.4  Liquidated Damages ...................................................... 50
Section 8.5  Partial Default ......................................................... 51
Section 8.6  Termination ............................................................. 52
Section 8.7  Partial Takeover ........................................................ 52
Section 8.8  Termination Due to Unavailability of Funds or Court Order. ............. 53
Section 8.9  Waiver .................................................................. 53

ARTICLE 9
    MISCELLANEOUS ..................................................................... 53
    Section 9.1   Disputes ............................................................ 53
    Section 9.2   Equal Employment Opportunity and Affirmative Action ................ 53
    Section 9.3   Binding Nature ..................................................... 53
    Section 9.4   Invalidity and Severability ........................................ 53
    Section 9.5   Counterparts ....................................................... 53
    Section 9.6   Interpretation ..................................................... 54
    Section 9.7   Terminology and Definitions. ....................................... 54
    Section 9.8   Venue .............................................................. 54
    Section 9.9   Prosecution Costs. ................................................. 54
    Section 9.10  Release ............................................................ 54
    Section 9.11  Amendment .......................................................... 54
    Section 9.12  Anticipated Amendment .............................................. 54
    Section 9.13  Scope of Agreement ................................................. 54
    Section 9.14  Anticipated Amendment for Monitoring and Support Staff ............. 54
    Section 9.15  Format of Reports and Data. ........................................ 55
    Section 9.16  Subcontracting and Assignment. ..................................... 55
    Section 9.17  Existing Agreements ................................................ 55
    Section 9.18  Last Day of Contract Agreement ..................................... 55
    Section 9.19  Internal Relations ................................................. 55
    Section 9.20  Notices. ........................................................... 55
    Section 9.21  Addresses and Signatures ........................................... 56

APPENDIX " A "
    Request for Prisoner Services ................................................... 57

APPENDIX B:
    Postsecondary Program Information ............................................... 58

APPENDIX C:
    Vocational Program Information .................................................. 59
        BUILDING TRADES AND RESIDENTIAL REPAIR ...................................... 59

**APPENDIX D:**
    Vocational Program Information ................................................... 60
        COMPUTERIZED INFORMATION PROCESSING ............................ 60

**APPENDIX E:**
    List of Drugs Included in Facility Medical Care ............................... 61

**APPENDIX F:**
    Liquidated Damages Calculation Worksheet ................................... 67

**APPENDIX G:**
    Time Line Summary ....................................................................... 68

# AGREEMENT

# BETWEEN

# STATE OF ALASKA

# AND

# CORRECTIONS CORPORATION OF AMERICA, INC.

d.b.a. Central Arizona Detention Center (CADC)

ASPS # 99-0001

This Contract made on this 29 day of June, 1998, between the State of Alaska, Department of Corrections ("State"), and Corrections Corporation of America, Inc., 10 Burton Hills Boulevard, Nashville, Tennessee, 37215. Corrections Corporation of America, Inc., doing business in Florence, Arizona, as the " Central Arizona Detention Center".

WITNESSETH :

WHEREAS, the State of Alaska Department of Corrections has a need for 626-1,350 beds of Prisoner housing; and

WHEREAS, Contractor has available 626-1,350 beds for the housing of Prisoners in a secure correctional facility located in Florence, Arizona;

NOW, in consideration of the mutual promises and covenants contained herein, the parties hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

ACA - shall mean the American Correctional Association.

ACA Standards - shall mean the Standards for Adult Correctional Institutions, Third Edition (as same may be modified, amended, or supplemented in the future) published by ACA.

Additional Services - means those additional operation and management services required to be furnished by CADC pursuant to changes in ACA or State policies from those in effect as of the

date of this Contract, which changes are required by changes in the ACA Standards, laws, government regulations, or court orders generally applicable to the State and which changes cause an increase in the cost of operating and managing the Facility.

<u>Cleary Court Settlement</u> - means the Final Settlement Agreement and Order ('FSA', 'Cleary Final Order'), dated September 21, 1991, plus subsequent court orders, resulting from the Superior Court decision in the Michael Cleary et.al., vs. State (Robert Smith, et.al.) case. The civil court case number is: No.3AN-81-5274 CIV. (Copy provided, see attachments.)

<u>Contract</u> - means this Agreement. A copy of the RFP will be attached as part of the final contract.

<u>Contract Monitor</u> - means the person appointed by the State, located in Alaska, who shall work for and be paid by the State. The Contract Monitor (Contract Action Officer or CAO) will be the official liaison between the State and CADC on all matters pertaining to the operation and management services of the Facility.

<u>Custody Levels</u> - means the custody levels specified in Alaska Administrative Code regulations, 2 AAC 05.271. (See attachments)

<u>Facility</u> - means the multi-custody facility for the detention of adults located at Florence, Arizona and known as the Central Arizona Detention Center (CADC) in which Prisoners will be incarcerated.

<u>Facility Security Level</u> - means the security level of the physical plant of the facility (walls, fences, layout, surveillance, etc.). A security level equal to or greater than that required for high custody level prisoners is required. (Equivalent to or greater than the security systems at Spring Creek Correctional Center.)

<u>Force Majeure</u> - means the failure of performance of any of the terms and conditions of this Contract resulting from acts of God.

<u>Indigent Prisoner</u> - shall include any person committed as a prisoner who qualifies as indigent under section 4.1.(e) of the contract.

<u>Prisoner</u> - shall include any person committed pursuant to applicable laws, rules and regulations and assigned to the Facility by the State for incarceration therein pursuant to this Contract.

<u>Prisoner Day</u> - means each 24 hour period a Prisoner is admitted to the Facility, plus the first day of incarceration, but not the last.

<u>Out of Facility Medical Costs</u> - means those Prisoner medical, mental health, and dental expenses incurred away from the Facility and to include but not be limited to costs incurred
---



during emergency room treatment and/or admission to a hospital, to include prosthetic devices as required in 4.8.

<u>Parole Board</u> - means the Alaska Parole Board including current members of the Board and the staff assigned to the Board.

<u>Reimbursable Medical Costs</u> - means those medical, mental health, and dental costs payable in whole or part by the State, as set forth herein.

<u>RFP</u> - means the request for proposals for these services. The terms and conditions of the RFP, Volumes 1-3, are attached to the contract as part of the contract agreement.

<u>State</u> - means the State of Alaska, Department of Corrections, Division of Institutions ("DOC" or "Alaska DOC" or "Department").

<u>Unforeseen Circumstances</u> - means those acts or occurrences beyond the reasonable contemplation of the parties at the time of the execution of this Contract which materially alter the financial conditions upon which this Contract is based; provided that such acts shall not include: I) inflation as contemplated by Section 6.4, ii) acts within the control of the party claiming an unforeseen circumstances, or iii) changes in law or regulation contemplated by Section 6.4. Unforeseen circumstances shall include the failure of the Legislature to appropriate funds to continue the Contract.

<u>Warden</u> - means the chief operating officer of the Facility.

## ARTICLE 2
## TERM OF THE CONTRACT

Section 2.1 **Term.** The first term of this Contract shall be for the period of time commencing at noon on or about **June 30, 1998**, and ending at midnight on **June 30, 1999, first segment funded to April 30, 1999, second segment funded May 1, 1999 to June 30, 1999.** The Contract shall continue for additional optional one year terms, for a maximum of six (6) years, plus one final optional four (4) month extension, until **October 31, 2004**, subject to annual appropriation by the Alaska Legislature, and the needs of the State, or unless either party gives the other written notice ninety days before the end of the original or any subsequent term of their intent to cancel the Contract. Within a reasonable time after receipt of any such notice and before the effective termination date, the State will, at its own expense, retake its prisoners from CADC.

## ARTICLE 3
## PRISONERS

Section 3.1 **Prisoner Housing.** CADC agrees to provide housing at the Facility for a minimum of 626 State Prisoners. CADC agrees not to house other than State Prisoners in beds contracted for under this agreement. Upon mutual agreement of both parties, this agreement may be expanded to house up to approximately **1,350-1,850** State Prisoners in the Facility (more than 1,850 may be housed upon mutual agreement of both parties.). It is agreed that expanding the number of prisoners in groups equivalent to the contractors housing "pod" sizes (38 or 48) will insure that Alaska State prisoners are housed separately from other prisoners.

Section 3.2 **Assignment of Prisoners.** The State agrees, if it deems appropriate, to send to the Facility prisoners who are classified as medium and close custody prisoners according to the classification system utilized by the State of Alaska and the CADC. (50%-75% or more of the prisoners will be medium to close custody prisoners.) Prisoners may include Prisoners designated as sex offenders by the State. The State may, at its discretion, send minimum custody prisoners. Prisoners may be reclassified to maximum as a result of behavior displayed at the Facility. Prior to the transfer of any prisoner to CADC, the State will furnish to CADC the following:

A)   The Prisoner's case history, physical, and clinical records;

B)   Applicable judicial and administrative rulings; the sentence or sentences for which the Prisoner is confined; and

C)   Orders relating or pertaining to the Prisoner.

Transfer or moving of prisoners to CADC will be deferred until approval by the CADC. CADC will either approve or deny transfers within five (5) working days of receiving paperwork. CADC reserves the right to reject any Prisoner whose file contains information

---

Contract Prison Beds; CCA/CADC          10          Florence, Arizona ASPS #99-0001



indicating that his classification as a medium, close, or maximum custody Prisoner is erroneous. No Prisoner convicted solely of a misdemeanor, according to the classification system used by CADC; or any Prisoner who is within 60 days of release from incarceration shall be assigned to CADC.

Section 3.3 **Delivery of Prisoners.** Upon acceptance by CADC, the State, at its expense, will deliver the Prisoner to the agreed upon <u>Arizona</u> airport and custody of CADC staff, together with an authenticated copy of the mittimus or other commitment order, and any other official papers or documents authorizing confinement. The State will provide a correctional officer and security from Alaska to and from the drop off and pickup point at the designated <u>Arizona</u> airport, or other State approved airport.

Section 3.4 **Return of Prisoners** to the State or other Facilities. Upon demand by State, CADC will relinquish to State physical custody of any Prisoner, unless CADC's compliance would cause CADC to violate the order of a court of competent jurisdiction.

A) Should a Prisoner be returned to the State as a result of an action by the Contracting State's Legislature, State court, or other similar entity which prevents Prisoner's confinement at CADC'S Facilities, CADC shall be responsible for the cost of transportation.



B) Should the Facility become unusable, in whole or in part, and the States Prisoners are transferred to another facility chosen by the State, CADC will pay such transportation costs. This Agreement will then be appropriately modified to reflect the impact of any such change in Facilities use.

C) In the event of fire, natural disaster, or other emergency situation that would require the immediate transfer of Prisoners to another secure facility, CADC may select such facility and shall transport Prisoners to such facility, as necessary to ensure both the safety and security of Prisoners. Under such circumstances, however, CADC shall notify State immediately, or in no case in more than 24 hours, of such an emergency transport. If this facility is not acceptable to the State, subsection B) above shall be implemented in a reasonable and timely manner.

Section 3.5 **Transfer of Prisoners between Contractor's Facilities.** The contract requires all beds to be provided at a single facility. However, it is an anticipated amendment that upon mutual agreement of State and CADC, with written pre-approval of the State, that CADC may transfer Prisoner(s) to other contractor facilities. Unless otherwise agreed, CADC is responsible for transport of Prisoner(s) back to <u>CADC</u> or <u>designated Arizona</u> airport, before their return to Alaska.

Section 3.6 **Transfer of Funds.** The State will provide funds due the transferred Prisoner to CADC to be credited to the Prisoner's account. Upon return to Alaska, or if released prior to return to Alaska, CADC will provide funds due the Prisoner to the State to be credited to the Prisoner. CADC will provide State with a copy of accounting transactions of any Prisoner in

---

Contract Prison Beds; CCA/CADC      11      Florence, Arizona ASPS #99-0001