no more than 5 business days from the date of request by the State.

## ARTICLE 4
## OPERATION OF FACILITY

Section 4.1 **General Duties.** CADC shall provide the services listed herein and shall maintain and manage the Facility in compliance with applicable federal and state constitutional requirements and law, court orders and ACA Standards. CADC and Facility shall comply with the Cleary Final Settlement Agreement and Order. If there exists a difference between the above standards and/or laws, the higher standard will be followed. CADC shall notify the State of non-compliance with applicable standards within five (5) working days. All official communication shall be managed according to policies to be adopted by all parties.

A)      Cleary Final Settlement Agreement and Order. Unless otherwise indicated in this contract, CADC and Facility will follow the Cleary Final Settlement Agreement and subsequent court orders.

B)      Reasonable and Humane Care. CADC will confine the State's prisoners and give them reasonable and humane care and treatment. CADC will provide, as set out herein, for their physical needs, make available programs, treatment and training consistent with their individual needs and the requirements herein, retain them in safe custody, supervise them, maintain proper discipline and control, make certain they receive no special privileges and that the sentences and orders of the committing court in Alaska are faithfully executed.

C)      Due Process. CADC agrees to provide Prisoners with due process prior to the removal of a prisoner from rehabilitative programs consisting of court ordered treatment programs including sex offender treatment; mental health treatment; substance abuse treatment; anger management; "batterers" programs which include written, individualized treatment plans and discharge summaries approved by the Alaska Director of Institutions; academic and educational vocational programs; employment in correctional industries programs and those programs which may be court-ordered as listed above but have not been so ordered by the court. Removal is the discharge or dismissal of a Prisoner from a program. Prisoners may be temporarily suspended from a program pending a final determination regarding removal. Removal is a classification decision which cannot be grieved. The following procedures shall be followed when removing a Prisoner from a rehabilitative program:

1)      When a determination is made that a Prisoner should be removed from a program because of failure to comply with the requirements of the program, or for other good cause, written notice of the intent to remove shall be delivered to the Prisoner using the form provided by the Alaska DOC. This form shall be

---

Contract Prison Beds; CCA/CADC                    12                    Florence, Arizona ASPS #99-0001

Statement of Facts
Exhibit 1 - page 31 of 89

properly completed to include the reason for the proposed removal and the time that the proposed removal will become effective.

2) The Prisoner shall acknowledge date and receipt of the form by signing it in the presence of staff. The Prisoner shall be provided with a copy of the signed form and the original signed form shall be placed in the Prisoner's institutional file.

3) A Prisoner may contest the proposed removal by submitting written reasons why the Prisoner should not be removed on the form within 2 working days of receipt of the notice of intent to remove. If the Prisoner contests the proposed removal, the CADC staff member who prepared the notice of removal, or other designated CADC staff member, shall review the Prisoner's response and issue a final decision within one working day. If the decision is to remove the Prisoner from the program, the removal will be effective when delivered to the Prisoner.

4) A Prisoner may appeal a decision to remove the Prisoner from a program to the Warden by filing an appeal within 2 working days of receipt of notice of removal on the appeal form provided by the Alaska DOC. The Warden will provide a written decision within 5 working days. The decision of the warden is final.

5) A Prisoner may be temporarily suspended from a program if an individual determination has been made by the Warden or Warden's designee that the Prisoner's continued participation in the program presents a substantial risk of disruption to the program, a risk of escape, threat to security of the institution, or threat to the safety of the public. This determination will be made on the form provided by Alaska DOC. A copy of this form will be provided to the Prisoner within one working day of the temporary suspension. A temporary suspension shall last only as long as the condition warranting the individual determination exists or until the Prisoner is removed from the program.

6) A Prisoner who has been removed may reapply for a program by contacting the Prisoner's Institutional Probation Officer, Unit Manager, or Program Supervisor.

7) Copies of all documents regarding Prisoner removals or temporary suspensions from programs shall be forwarded to the Alaska DOC on a monthly basis on or before the tenth day of the following month.

D) Administrative Segregation. Prisoners in administrative segregation shall be entitled to the same rights, privileges, and opportunities available to Prisoners in the general population unless an individualized determination is made that participation in a specific right, privilege, or opportunity presents a threat to the order and security of the facility. This determination shall be made in writing on the form provided by Alaska

---

Contract Prison Beds; CCA/CADC          13          Florence, Arizona  ASPS #99-0001

DOC and shall state the specific facts which justify the finding that a Prisoner is not entitled to participation in a certain right or opportunity. A copy shall be provided to the Prisoner. Absent an individual determination to the contrary, Prisoners in administrative segregation shall be provided with daily access to the telephone and access to the law library within one day of the submission of a written request. If an individual determination is made that a Prisoner not have access to the law library, upon written request the Prisoner shall be provided with at least four law books in the prisoner's cell and the assistance of the law librarian to locate, research, and obtain legal materials.

E)    **Maximum Custody Housing.** A maximum custody prisoner must be placed in secure housing, with very limited program activities, with maximum supervision within the secure perimeter of the facility. If necessary, an individualized determination to preclude participation in the above activities shall be made in writing on the form provided by Alaska DOC, and it shall state the specific facts which justify the finding that a Prisoner is not entitled to participation in a certain right or opportunity. A copy shall be provided to the Prisoner. Absent an individual determination to the contrary, Prisoners in maximum custody housing shall be provided with daily access to the telephone and access to the law library within one day of the submission of a written request. If an individual determination is made that a Prisoner not have access to the law library, the prisoner shall be provided with at least four law books in the Prisoner's cell and the assistance of the law librarian upon written request to locate, research, and obtain legal materials.

F)    **Indigent Prisoners.** CADC shall apply Alaska DOC indigency standards to Alaska Prisoners. Alaska Prisoners are considered to be indigent when they have less than $20.00 presently available in their prison account and have had no more than $50.00 in their account during the preceding 30 days. A Prisoner with more than $50.00 in his or her account during the preceding 30 days will still be considered indigent if no more than $50.00 remained in the account after mandatory deductions (that is, restitution, fines, child support enforcement orders, violent crimes compensation payments or civil judgements) or deductions made for educational materials or courses, counseling, or health care.

Section 4.2   **Admitting and Booking.** CADC shall be responsible for the admitting and booking of Prisoners placed in the Facility. CADC may refuse to accept any Prisoner. Prisoners will be admitted to the Facility under the terms of this Contract upon written instructions and authorization satisfactory to CADC. (See Appendix A, attached hereto.)

Section 4.3   **Safety and Emergency Procedures.** CADC will develop procedures to provide for emergencies such as labor disputes, riots, fire and civil disaster. CADC shall operate and maintain the Facility in compliance with applicable federal, state and local safety and fire codes and in accordance with ACA Standards. In the event of non-compliance, CADC shall

---

Statement of Facts
Exhibit 1 - page 33 of 89

immediately notify the Contract Monitor and present a plan of the proposed corrective action(s). The State may either accept the plan or shall have available any other remedy allowed herein.

Section 4.4  **Sanitation/Hygiene/Accommodations.** CADC will implement policies and procedures in conformity with applicable ACA Standards, regulations, laws and codes mandated by county, state and federal governmental agencies to ensure that the Facility meets sanitation standards.

Section 4.5  **General Library.** CADC will establish and maintain a library consistent with ACA standards.

Section 4.6  **Minimum Program Requirements.** CADC agrees to provide, at minimum, the following program requirements to keep prisoners gainfully occupied a minimum of 8 hours per day, and agrees to implement the programs according to the following schedule.

A)  **Lifeskills** **(Required to be on line immediately.)** The program may be provided as part of the education component. The state will provide up to a maximum of ten (10) hours of technical assistance to the staff in lifeskills program development. Lifeskills must include programs in the following areas:

1)  Communications skills (e.g. interpersonal relationships, parenting, assertive communication, values clarification);

2)  Health and safety (e.g., anger and stress management, CPR/first aid, personal hygiene, decision-making);

3)  Cultural activities (e.g. cross-cultural communications, cultural awareness events and activities and cultural groups);

4)  Pre-release preparation (e.g. career planning, budgeting/money management, consumer education, job seeking skills).

B)  **Education** **(On line in two stages.)**

1)  **ABE and GED program.** **(On line and available to a minimum of 10% of Prisoners immediately.)** CADC shall provide classes in ABE (adult basic education) and GED preparedness. CADC's program should provide literacy, remedial education, pre-GED and GED classes. These classes shall be available immediately to a minimum of 10% of prisoners.

(a)  CADC agrees to provide an Adult Basic Education (ABE) program to consist of foundations (remedial), literacy, pre-GED and GED. Prisoners' existing educational achievement score (EA) will be used, or CADC will test to provide an EA score (or State approved equivalent testing), to place them in an appropriate class as follows:

(b)  EA score of between 0 and 3.9: Foundation and/or Special Education; EA score of between 4.0 and 5.9; Literacy;

---

Contract Prison Beds; CCA/CADC          15          Florence, Arizona ASPS #99-0001

EA score of between 6.0 and 7.4; Pre–GED; and

EA score greater than 7.5; GED or advanced levels of training as appropriate.

(c)    Foundation and/or Special Education is designed to meet individual · needs through a comprehensive individual assessment; development of an individual education plan; and implementation and regular progress reviews of the plan.

(d)    The literacy portion of ABE provides material in math, reading, English, science and social studies which is age and reading ability appropriate.

(e)    Pre–GED and GED also focus on math, reading, English, science and social studies. Prisoners are allowed to take exams and focus on the areas they are deficient in.

2)    <u>Postsecondary degree program</u>.   **(On line within 60 days.)**  CADC shall provide assistance to those Prisoners enrolled in a Postsecondary degree program (college correspondence classes).  The cost of tuition and books is the responsibility of the Prisoner.  CADC shall provide outline of how such assistance will be provided at their Facility.

State estimates the following Education Coordinator staff requirements for the projected Prisoner Increases during the term of the contract: 626 Prisoners, 3 Education Coordinators; 786 Prisoners, 4 Coordinators; 900 Prisoners, 5 Education Coordinators.  Number of Coordinators shall increase proportionally above 900 Prisoners. Contractor must meet the minimum number of education coordinators as the number of prisoners increases.

The program must offer or make available at least 12 credit hours per semester for two academic semesters each year.  If the program is offered by other than direct instruction, CADC shall make available on-site tutorial assistance.  CADC shall evaluate the Prisoner's educational  preparedness to participate in the program and shall offer such remedial course work as is necessary for entrance into the program.

(a)    <u>Postsecondary Degree Program.</u>  CADC will implement a Postsecondary program consisting of correspondence courses.  If the number of participants meets the minimum number required by the college giving the courses, CADC will provide on-site course instruction.

(b)    Post secondary courses will be available to prisoners that are similar in content, format and quantity to the course descriptions provided by CADC in Appendix B (attached).

C)    <u>Vocational Programs</u>.  **(On line within 60 days.)**  The CADC must provide a minimum

of two (2) vocational programs for Alaska Prisoners.

1)  Vocational programs are required to meet the definition of 'vocational education' recognized by the Carl D. Perkins Vocational and Applied Technology Education Act, PL 100-329, to wit:

"The term 'vocational education' means <u>organized</u> educational programs offering a <u>sequence</u> of courses which are <u>directly related</u> to the preparation of individuals in paid or unpaid <u>employment</u> in current or emerging occupations requiring other than a baccalaureate or advanced degree. Such programs shall include <u>competency-based applied</u> learning which contributes to an individual's academic knowledge, higher-order reasoning, and problem-solving skills, work attitudes, general employability skills, and the <u>occupational-specific</u> skills necessary for <u>economic independence</u> as a productive and contributing member of society. Such term also includes applied technology education."

2)  Vocational programs may not consist solely of apprenticeship program(s). Any apprenticeship programs that are offered are to be in addition to the two vocational education programs.

3)  Vocational programs that are certified are preferable.

4)  Vocational programs will be provided at no additional cost to Prisoners.

5)  Vocational opportunities will be available for at least 38% of the prisoners immediately. Vocational opportunities will be available for a minimum total of 90% of prisoners within 6 months. Vocational programs will be available, space permitting, to interested prisoners who demonstrate success in course work progression.

D)  <u>Substance Abuse Rehabilitative Services</u>  **(AA and NA immediately, additional programs on line within 60 days.)** To insure consistency with the substance abuse programming provided by the State of Alaska the contract must provide substance abuse programming through an outpatient model. State staff will provide a maximum of six (6) hours to assist CADC. This treatment model requires that CADC provide four (4) substance abuse counselors certified at a level equivalent to Alaska level II (at minimum) for 626 Prisoners. The substance abuse treatment program for Alaska prisoners must be certified by the Commission on Accreditation of Rehabilitation Facilities (CARF) standards, or certified by the appropriate State of Arizona Drug or Substance Abuse Control Agency.

State estimates the following Substance Abuse Counselor staff requirements for the projected Prisoner increases during the term of the contract: 626 Prisoners, 4

---

Contract Prison Beds; CCA/CADC             17             Florence, Arizona  ASPS #99-0001

Counselors; 786 Prisoners, 5 Counselors; 900 Prisoners, 6 Counselors. Number of Counselors shall increase proportionally above 900 Prisoners. Contractor must meet the minimum number of SA counselors as the number of prisoners increases.

The program must include the following elements:

1)   Follow the 12 step model including an emphasis on criminal thinking errors and relapse prevention as used in the Gorsky Model;

2)   Develop the Prisoner's understanding of the effect of his behavior on victims;

3)   Prisoner self esteem and personal development;

4)   Provide for support groups for relapse prevention; and

5)   In view of the importance of protecting the client/therapist privilege, and confidentiality of patient records, the State requires the contractor and/or sub-contractors to undertake and agree to faithfully comply and abide with the provisions of Section 408 of Public Law 92-255 as amended by Section 303 of Public Law 93-282 as described in 42 CFR Part 2.

E)   <u>Exercise/Recreation Activities.</u>  **(On line immediately)** CADC shall provide adequate opportunities for physical exercise. Physical exercise is a Cleary requirement and must be met under the terms of the contract. CADC'S will provide opportunities for exercise and leisure time activities that are in compliance with ACA Standards. The recreational program will include both indoor and outdoor activities. The program must meet the following criteria:

1)   Exercise and recreation for the general population Prisoners shall be available at least seven hours per week, with exercise available a minimum of 5 days per week.

2)   Outdoor recreation shall be available at a minimum of 50% of the time except during severe weather conditions. Severe weather conditions are those "weather alert" conditions determined by the national weather service to be of danger to the public.

3)   Prisoners under medical care shall have the same opportunity for recreation as a Prisoner in general population, subject to limitations set by the medical staff.

4)   Prisoners in administrative segregation shall have the same right to recreation as Prisoners in general population.

---

Contract Prison Beds; CCA/CADC                18                Florence, Arizona  ASPS #99-0001

5) Prisoners in punitive segregation and maximum security shall have the right to out-of-cell exercise at least one hour per day and shall have access to fitness equipment sufficient to exercise the large muscle groups in an area large enough to reasonably accommodate the equipment and activity.

F) Leisure Time Activities **(On line immediately.)**   An observed area must be provided for prisoners to have leisure or recreational time out of their cells. At minimum, "day room" areas to be equipped with furniture, games, TV, etc.

G) Hobby Craft/Art Activities **(In cell activities, subject to security considerations, on line immediately; additional programs on line within 60 days.)**   It is essential that CADC provide an area where prisoners can participate in hobby activities of interest. Hobby crafts consist of, at a minimum but not limited to: Painting and Drawing (on line immediately); Ivory carving; woodworking; leather craft; and jewelry, as described in Department Policy and Procedure 815.04, Art and Craft Programs (see attachments). The facility should also have an approved outlet or mail order outlet available for prisoners to purchase art and hobby tools and supplies.

1) Prisoners shall have access to Hobby craft for at least six hours per day seven days per week.   Prisoners shall have access to Hobby craft areas for at least two hours per evening on at least five evenings per week.

2) The degree of access provided to an individual Prisoner is up to the discretion of the Warden.

H) Religious Programming   **(On line immediately.)**

1) CADC shall ensure that each Prisoner is provided the freedom to exercise the religious beliefs and practices of his or her choice, and has access to religious resources, services, publications and counseling. (The facility may place limits on the exercise of religious practices and access to religious resources and services when reasonably necessary to achieve legitimate penological objectives of safety, security and orderly operations.)

2) The CADC may not deny the free exercise of a religious belief, or access to religious resources, service, or publications because the particular belief is unorthodox or unpopular, because the belief is held by a small number of individuals, or is of recent origin, or because it is not based on the concept of a supreme being or its equivalent.

3) A room shall be available for religious services, preferably designated as a religious service area.  A baptismal tank and other furnishings will be made available as necessary for religious and spiritual services and ceremonies.

4) A non-denominational chaplaincy program shall be provided, including the

---

Contract Prison Beds; CCA/CADC          19          Florence, Arizona  ASPS #99-0001

services of a full-time Chaplain for Alaskan Prisoners. Non-denominational means inclusive of all faiths and religious or spiritual beliefs.

5)    The chaplain(s) will have his or her own office in a location where Prisoners will have access to the chaplain(s).

6)    The chaplain will ensure that adequate and essential religious programming for Alaska Prisoners is provided. The chaplaincy program shall be inclusive of all faiths and religious or spiritual beliefs, insuring that all Prisoners have the opportunity to practice their respective religions or spiritual practices, as long as such practices do not violate or compromise institutional security and safety.

7)    The chaplain will be responsible for the provision, scheduling, coordination and supervision of religious services, programs, and activities within the facility. This will include arrangements for the administration of sacraments, ordinances, ceremonies, and other religious rites.

8)    The chaplain shall make contact with churches and other religious and spiritual organizations on a regular basis for the purposes of recruiting religious volunteers and faith representatives. A strong religious volunteer program shall be developed with clergy and lay volunteers from all faiths and denominations participating in religious services, visitation ministry, spiritual counseling, and other services as needed. Volunteers shall have appropriate background clearances, training, and supervision.

9)    The chaplain shall ensure that Alaska Prisoners are informed about the availability of religious programs and services and the procedure for contacting the chaplain.

10)    The chaplain shall make regular visits to the Prisoner living areas to maintain a visible presence for Prisoners and staff.

11)    CADC shall ensure that if representatives of Prisoners' respective faiths request visitation during normal visiting hours and the representatives comply with the Center's visitation policy, the Prisoners will be permitted to visit. Special visits may be approved as deemed necessary in an emergency or crisis which warrants religious consultation.

12)    The chaplain shall make religious resources available to Prisoners, including Bibles, Korans, etc., and other appropriate resources as needed.

13)    Accommodations must be made for the specific religious requirements of Alaskan Natives, including sweat lodges and potlatches, subject to security and safety considerations. The State's Chaplain is available to consult with CADC about these issues.

14)    The chaplain shall make regular monthly reports to the Chaplaincy Coordinator

---

Contract Prison Beds; CCA/CADC                    20                    Florence, Arizona  ASPS #99-0001

of Alaska as to Prisoner attendance at religious services, volunteer participation, and religious or spiritual groups involved.

I)  <u>Work Programs</u>  **(Basic work opportunities for 50% available immediately, provide full work program, work projects and vocational education opportunities for 60% of population within 6 months.)**  CADC shall ensure that as many job opportunities as resources permit are available to prisoners.  CADC agrees to provide a minimum of 50% of prisoners with work opportunities immediately.  The schedule for immediate work opportunities may be adjusted by CADC to 3 ½ days at eight hours per day;  or 5-7 days at four hours per day.  CADC  agrees to provide immediate work opportunities for the following jobs (or similar state approved substitutions):

| Job Type | # Prisoners | # hours/day |
|---|---|---|
| Kitchen | 4 % | 8 |
| Janitors | 3 % | 8 |
| Laundry | 2 % | 8 |
| Porters | 12% | 8 |
| Commissary | 1 % | 4 |
| Barber | 1 % | 8 |
| Peer tutor | 2 % | 4 |
| Recreation Aide | 1 % | 20/wk |
| Library Aide | 1 % | 20/wk |
| <u>Five additional jobs</u> | <u>3 %</u> | <u>4</u> |
| Immediate Jobs | 30 % eight hour jobs, or up to 60% four hour jobs. | |

1)  Within 6 months, CADC agrees to have on line a full spectrum of  work and vocational opportunities for a minimum of 90% of Alaskan prisoners, 4-8 hours a day, 5 days per week.  Including but not limited to:  maintenance type projects, janitorial, kitchen, laundry, commissary, barbers; and vocational programs.

2)  CADC will implement the Alaskan prisoner pay scale.   The State agrees to reimburse the CADC for these funds.  CADC will provide the State with an itemized billing for these costs and agrees that there will be no added administrative charge for this service.

3)  Prisoner accounts will be maintained by the Facility.  Upon return transfer to the State, prisoner accounts will be sent to the State in a standard accounting format.

4)  State prisoners will be housed separately from other prisoners as long as State prisoners fill the particular housing "pod" unit(s).

5)  State prisoners housed in pods not completely filled with State prisoners, or State prisoners participating in program groups with non-state prisoners, shall be afforded, at a minimum,  the benefits and privileges allowed State prisoners elsewhere in this Contract.

---

J)  <u>Pre-Release Assessments, Classification and Parole Planning</u>  (**On line immediately.**)
    CADC shall cooperate with the Department of Corrections and the Alaska Parole Board
    in the Alaska parole process.  CADC will meet State's assessment requirements.

1)  CADC shall provide corrections counselors as needed who are familiar with the
    Prisoners status to assist with the Prisoner's application for parole and planning
    for their appearance before the board.  Case manager shall contact State Contract
    Monitor with any questions raised by Prisoners regarding practices of parole
    board and State shall provide requested information as soon as is possible.  In
    addition to the corrections counselor provided by the CADC, at the discretion of
    the State, Correctional Officers may be placed on site.

2)  At the request of DOC staff or the Parole Board CADC shall provide requested
    reports relative to the Prisoner's progress while in custody consistent with
    section 4.24.c of this contract.

3)  CADC shall assist in the arranging for parole hearings conducted either on site
    or telephonically.  The cost of telephonic hearings shall be borne by the state.

4)  CADC shall provide a corrections counselor familiar with the progress of the
    Prisoner to participate and provide information at applicable hearings, including
    classification hearings.

5)  CADC shall cooperate with DOC staff in planning for interstate release of
    Prisoners.

6)  CADC shall coordinate with DOC in the classification of Prisoners.

7)  CADC shall assist in the arranging for classification hearings conducted either
    on site or telephonically.  The cost of telephonic hearings shall be borne by the
    State of Alaska.

8)  It is recommended that the prisoners sent to CADC be scheduled for return to
    Alaska approximately ninety (90) days prior to the date of release.  This would
    allow for local pre-release planning.

9)  CADC agrees to increase the number of case managers to augment the workload
    of State's Probation Officers, and continue to do so as the number of prisoners
    increases.

10) CADC agrees to provide probation officer office space.  The office space may be
    shared so long as it is equivalent in size to Unit Managers Office.

---

Contract Prison Beds; CCA/CADC          22          Florence, Arizona  ASPS #99-0001

11)    CADC agrees to provide adequate clerical support in the amount of a minimum of one (1) FTE clerical support person for 626 prisoners, increased proportionally as the number of prisoners increases.

K)    <u>Gate Money</u>  CADC will provide gate money, in an amount stipulated by the State, to Prisoners not released in Alaska.  The State agrees to reimburse the CADC for these funds.  CADC will provide the State with an itemized billing for these costs and agrees that there will be no added administrative charge for this service.

Section 4.7  <u>Medical: Counseling/Mental Health.</u>  CADC shall assure that mental health professional services are available and shall ensure that if it is indicated that a prisoner is suffering from mental illness or is in need of immediate mental health care, the prisoner shall be referred for evaluation and diagnosis by a clinical psychologist or psychiatrist or a qualified mental health professional that meets state and/or national certification, under the clinical supervision of a clinical psychologist or psychiatrist. The Psychiatrist shall be on call a minimum of 12 hours per week.

A)    The CADC shall ensure that any Prisoner identified as suffering from a major mental illness receives the appropriate mental health treatment required to address the Prisoner's needs.  The use of psychotherapeutic medication shall not be used in lieu of counseling or other psychiatric services for a Prisoner unless part of a treatment plan initially prescribed by a physician or psychiatrist and reviewed monthly by a physician, psychiatrist, other qualified mental health professional, physician's assistant, or advanced nurse practitioner; or unless required in an emergency to prevent the Prisoner from causing injury to self or others, or being harmed by others within the facility. CADC Medical staff shall request State input on the triage and diagnostic assessment of a prisoner prior to placing that prisoner on psychotropic medications.  Unless it is an emergency situation, all psychotropic medication requests must be preapproved by the State.

B)    Final Authority for all mental health plans rests with the Mental Health Supervisor and Staff Psychiatrist of the State.

C)    Monthly treatment teleconferences will be held between the contract facility mental health staff and that of the State, unless otherwise instructed by the State.

D)    Emergency requests (from Prisoners and staff) for mental health intervention (exhibiting behavior indicating imminent danger to self or others) are to be seen by qualified mental health staff.  An after hours "on call system" will be in place to assist the medical staff in managing the Prisoner.  A qualified mental health staff is defined as: a psychiatrist, clinical psychologist, Master's prepared psychiatric social worker, or a Master's prepared level clinician.  <u>Emergency requests are to be seen within 12 hours.</u>

---

Contract Prison Beds; CCA/CADC              23              Florence, Arizona  ASPS #99-0001

Urgent request for intervention (Prisoner exhibits unstable behavior, displays signs and or symptoms indicating a risk potential for harm to self or others) are to be seen by a qualified mental health professional within 24 hours.

Routine requests for mental health care (stable condition, Prisoner wants to talk, ask questions about medications) are to be seen within one week.

E)    The use of physical restraints or segregated housing shall not be used in lieu of counseling or other psychiatric services for a Prisoner suffering from a mental illness unless part of a treatment plan prescribed and reviewed monthly by a qualified health care or mental health care professional, or unless in an emergency.

Section 4.8   **Medical/Dental.**

A)    Minimum Staffing Levels.  The CADC shall provide the following medical, dental, and mental health staffing levels dedicated to Alaska Prisoners.  CADC will follow the Department of Correction's action plan, or any subsequent changes currently on file with the court; significant cost impacts will follow the procedures set forth in Section 6.4 of this document.  Levels will be increased in proportion to prisoner increases.

| Staff | Population 626 | Population 786 | Population 900 |
|---|---|---|---|
| Physician | 8 hrs /wk | 10 hrs/wk | 16 hrs/wk |
| PA/NP | 40 hrs/wk | 50 hrs/wk | 60 hrs/wk |
| Psychiatrist | 12 hrs/wk | 15 hrs/wk | 20 hrs/wk |
| Mental Health | | | |
|   Clinician | 40 hrs/wk | 80 hrs/wk | 120 hrs/wk |
| Nurses | | | |
|   Supervisor | 40 hrs/wk | 40 hrs/wk | 40 hrs/wk |
|   Day Shift | 2 FTE  RN | 2 RN, 1 LPN, FTE | 2 RN, 2 LPN, FTE |
|   Evening Shift | 1 RN, 1 LPN, FTE | 1 RN, 2 LPN, FTE | 1 RN, 2 LPN, FTE |
|   Night Shift | 2 LPN, FTE | 1 RN, 1 LPN, FTE | 1 RN, 1 LPN, FTE |
| Nursing Assistant | .75 FTE | 1 FTE | 1.5 FTE |
| Admin/Records | | | |
|   Clerk | 40 hrs/wk | 40 hrs/wk | 80 hrs/wk |
| Dental | | | |
|   Dentist | 20 hrs/wk | 32 hrs/wk | 40 hrs/wk |
|   Assistant | 20 hrs/wk | 32 hrs/wk | 40 hrs/wk |
|   Hygienist | 20 hrs/wk | 32 hrs/wk | 40 hrs/wk |
| Correctional Officers | | | |
|   Day Shift | 80 hrs/wk | 80 hrs/wk | 80 hrs/wk |
|   Evening Shift | 80 hrs/wk | 80 hrs/wk | 80 hrs/wk |
|   Night Shift | 40 hrs/wk | 40 hrs/wk | 40 hrs/wk |

| Janitor | 40 hrs/wk | 40 hrs/wk | 40 hrs/wk |

Notes:
1) FTE = full time equivalent, 40 hrs/wk
2) Substitutions must be provided to maintain these staff levels during absences.
3) Nursing levels are minimal levels to maintain Prisoner safety, they are not in proportion to number of Prisoners.
4) Correctional Officers for Prisoner supervision. One needed for pill passes, escorting Prisoners to sick call, etc, and the other is stationed in Medical during sick call and dental care.

**B)** Clinic Space. CADC must provide adequate clinical space for the efficient functioning of the staff shown above. An infirmary with a minimum of 3 beds is essential. Beds will be increased proportionally as the number of prisoners increases. The number of infirmary beds for increasing population levels are:

| 600 Prisoners | 3 Infirmary Beds |
| 786 Prisoners | 4 Infirmary Beds |
| 900 Prisoners | 6 Infirmary Beds, etc. |

**C)** Pharmacy Supply. CADC shall provide stock pharmacy supplies to ensure that Prisoners have an adequate and timely supply of medications and medical supplies in the facility. Medications prescribed must be available to the Prisoner within 24-48 hours of the time the prescription is written.

**D)** CADC will develop Facility specific Medical policies and procedures that will be utilized at the Facility and incorporated into the Policy and Procedures manual that is furnished to the Director of Institutions. Every attempt will be made to merge the policies of Facility and State, however where policies differ, State policy shall prevail.

**E)** CADC will provide a medical services and dental program in accordance with ACA Standards, and consistent with federal and state, local law and regulations. The program will provide Prisoners with a medical and dental screening to be performed upon admission to the Facility, and sick call within the Facility. CADC shall be responsible for the cost of all medical and dental services provided within the facility; including medication costs on the list in Appendix D, nursing care, and visiting physicians.

The State shall be responsible for out of facility medical costs and for security furnished in connection with admission to a hospital, or for emergency room care which exceeds 4 hours. CADC shall be reimbursed by the State at a rate of $13.50 per hour for this security coverage, including travel time from the Facility to the hospital or health care institution. If overtime pay is necessary, then the State will reimburse at a rate of $20.50 per hour. The State shall reimburse CADC for all medical costs and expenses

---

not specified above or otherwise in this contract. The medical screening of Prisoners provided upon commencement of this contract must be completed within the first three (3) days of arrival at the facility.

F)    Except in an emergency, when, in CADC medical staff's best judgement, out of facility medical, mental health, or dental care or treatment will exceed $500, CADC will notify the State of the nature of the illness or medical condition, recommended course of treatment, and the estimated costs thereof. The State may authorize treatment outside the correctional facility at its expense in Arizona, or, at its option, return the Prisoner to its jurisdiction for the required medical, mental health, or dental treatment. In the absence of any emergency, the State will not be obligated to reimburse CADC for the cost of such additional care or treatment undertaken without the prior approval of the State.

State will not be obligated to pay for costs of medical treatment or transportation due to contractor error: i.e. return trips required because contractor failed to send x-rays or file information with prisoner the first trip visit.

G)    In an emergency, CADC may make appropriate arrangement for emergency medical treatment which, in CADC medical staff's best judgement, will exceed the $500 limit, without first obtaining the State's approval. CADC will notify the State as soon thereafter as practicable.

H)    The State will reimburse CADC monthly for the medical services and expenses for which it is responsible under this section. CADC shall provide invoices to the State for such costs and agrees not to add additional administrative charges for reimbursed costs. Billings for medical services are to include diagnosis and explanation of services provided.

I)    Transportation. CADC will provide security and transportation from the facility to and from medical appointments, court appointments, and emergency medical care, at its expense. CADC shall also provide at its expense, security and transportation from the facility to and from a designated airport in Arizona, said airport to be agreed upon by both parties. The State shall provide transportation from Alaska to and from the designated airport in Arizona and shall be responsible for the costs of all other transportation, except as otherwise provided in this document. However, in an emergency as specified herein, the State will be responsible for the cost of ambulance and air ambulance transportation costs.

J)    All Prisoners shall be entitled to necessary medical, dental, and mental health services comparable in quality to those available to the general public. CADC shall utilize the most cost effective method of treatment to meet necessary medical needs whenever

---

possible; however, the primary basis for any medical decision shall be medical necessity and not cost.

K) The CADC shall provide those health care services which are required to alleviate pain and suffering, including those procedures deemed necessary to aid in increasing the level of functioning throughout the Prisoner's sentence, such as prosthetic devices. CADC shall not provide health care services to improve cosmetic appearance or to permit functioning at levels not directly related to rehabilitation, services for conditions that were long standing prior to incarceration and not deemed necessary to alleviate pain and suffering (unless it is a serious medical need that requires treatment), or experimental services. CADC will not deny medical care which is necessary to enable a Prisoner to participate in or benefit from rehabilitative services.

L) Any health care treatment offered or provided at a facility by health care personnel other than a physician, dentist, psychiatrist, psychologist, optometrist, osteopath, podiatrist, physician's assistant, or advanced nurse practitioner, must be performed pursuant to written, standing or direct orders by personnel authorized by law to give such orders.

M) Except as set out below, no treatment, non-routine examination or procedure may be undertaken without first obtaining the informed consent of the Prisoner. Informed consent is the agreement by the Prisoner to the treatment, non-routine examination or procedure after being provided the material facts regarding the nature, consequences, risks and alternatives concerting any proposed treatment, non-routine examination or procedure. Informed consent may be dispensed with at the discretion of the treating health care provider when the medical condition of the Prisoner (i.e., emergency) or public health concerns (e.g. communicable diseases) require immediate intervention, or when the Prisoner lacks the capacity to give consent as determined by a physician.

N) CADC shall notify the department in case of serious illness or injury.

O) Sick Call, Pill Call and Pharmaceuticals. The Contractor's sick call under this contract shall be conducted by a physician or other qualified health care personnel, and shall be available exclusively to Alaska Prisoners at specified times which are posted in all Alaska housing units. The specified minimums are:

1) Sick call minimums:
   Prisoner must be seen in Nurse line within 1 day of request.
   Prisoner must be seen in Physicians Assistant line within 3 days of referral.
   Prisoner must be seen in MD line within 5 days of referral.
   Nurses must follow established protocols.

2) Pill call minimums:
   Pill Call hours will be posted in all modules.

---

Contract Prison Beds; CCA/CADC                27                Florence, Arizona ASPS #99-0001

Pill call rounds will be 3 times/day, 7 days/week for regular prisoners.
Pill call rounds will be 1 time/day, 7 days/week for segregation prisoners.

3) Pharmaceuticals:

Pharmaceuticals will be available in a sufficient quantity so that there is not more than 24 hours, or as directed by the prescribing practitioner, between the order of the medication and the administration of the medication.

P)   Housing assignments, program assignments, disciplinary measures, and transfers to or from facilities regarding any Prisoner diagnosed as having a significant medical illness or condition must be approved by responsible health care personnel. Health care personnel may only disapprove such actions for sound medical reasons.

Q)   The CADC shall have an internal appeal procedure to the Director of Medical Services or other supervisory medical personnel as approved by the State to independently review all medical decisions made regarding health care to Prisoners whenever treatment has been recommended by a consulting physician and has been denied by CADC or CADC's health care operations officer, or when a prisoner appeals a medical grievance. CADC shall send copies of these internal appeals, grievances and dispositions to the State monthly. A Prisoner may appeal a decision of CADC's internal procedure through the State's internal appeal procedures, the final decision on all medical treatment rests with the State.

R)   A Prisoner under medical care shall have the same opportunity for recreation as a Prisoner in general population, except to the extent that health care personnel determine that a particular activity or activities present a danger to the Prisoner's health.

S)   Medical Screening. The Contractor medical personnel shall screen written requests for health care within 24 hours or receipt of such written request to determine whether a Prisoner needs to be examined by a physician assistant or nurse practitioner. If it is determined from the above screening or at nurse sick call that the Prisoner needs an examination by a physician assistant or nurse practitioner, such examination shall take place within 72 hours of the receipt of the written request, or sooner if necessary. The time, date, and signature of the medical personnel who performed the screening or sick call and any examination shall be noted on the Prisoner's written request and the request shall be placed in the prisoner's file.

Summary of Medical Care Minimum Time Frames. The following minimum time frames for prisoners to receive medical care will be met by CADC:

1) Intake screening minimums:
   a)   Health, Mental Health, and Suicide will be completed within 72 hours of intake into the facility.
   b)   Dental Screening will be completed within 14 days of admission into CADC.
   c)   Physicals will be completed within 14 days of admission by MLP or

---

Contract Prison Beds; CCA/CADC          28          Florence, Arizona ASPS #99-0001

MD.
d)    Dental Exam will be completed within 60 days of admission.

2) Mental Health:
a)    Emergency referrals – seen within 12 hours.
b)    Urgent referrals – seen within 24 hours.
c)    Routine referrals – seen within 7 days.

3) Dental Health:
a)    Urgent – seen within 24 –72 hours.
b)    Moderate – seen within 7 working days.
c)    Routine – seen within 60 days.

4)  Chronic Care:
a)    Prisoners will be screened within 3 days after arrival to facility and be referred to MD or PA/NP if necessary.
b)    MD or PA/NP will see them within 14 days after arrival to facility.

5)  Optometry:
a)    Prisoners will be seen within 60 days of request provided they meet the DOC policy criteria.
b)    Glasses will be given to prisoners within 3 weeks from their appointment.
c)    Frames for glasses will be individually fitted to the Prisoner.

6)  Emergency Care:
a)    The minimum response time within the facility will be 4 minutes, per the CADC policy.
b)    The minimum response time for ambulance to transport Prisoner to out of the facility emergency care is 20 minutes.

7)  Speciality Services:
Referral of the Prisoner for speciality or consultative services will be submitted to Alaska DOC for approval within 3 working days of referral.  The provider will state the priority of the needed service:
a)    Emergency & Life Threatening – sent to DOC via fax or telephone call to the on-call person, but CADC will act immediately without waiting for DOC response.
b)    Urgent – will need to be seen within one week.
c)    Moderate – will need to be seen within one month.
d)    Routine – will need to be seen within two months.
e)    Other – Will be specified in CADC policy and procedures.

T)    Contractor and State agree that if the Contractor fails to meet the Medical requirements of this contract the State may access and subtract from the billing amount, Liquidated Damages charges under Liquidated Damages Section of the Contract.

---

Contract Prison Beds; CCA/CADC          29          Florence, Arizona  ASPS #99-0001

U)   Quality Assurance and Monthly Audits.  The Contractor will conduct quality assurance procedures including chart-reviews by nursing staff to assure that practitioner orders are taken from the charts by nurses, necessary follow-up care is provided, and medications are continued as prescribed.  A physician shall also conduct chart reviews as necessary to review care provided by mid-level practitioners and nurses.

CADC will do monthly audits using their CQI manual, upon approval of the manual by Department of Corrections.  Department of Corrections will review 20% of the charts, and may review a higher percentage.  The CADC will conduct quality assurance procedures including chart-reviews by nursing staff to assure that practitioner orders are taken from the charts by nurses, necessary follow-up care is provided, and medications are continued as prescribed.  A physician shall also conduct chart reviews as necessary to review care provided by mid-level practitioners and nurses.

V)   Telemedicine.  Both parties agree that should the State implement a Telemedicine program, that upon mutual agreement of both parties, Telemedicine provisions may be added to this contract in the future.

Section 4.9   **Food Service.**  CADC will provide food service in accordance with State Department Policy and Procedure 805.01, Food Service Standards, and ACA Standards.  Food served is required to be generally equivalent to food served in Alaska.  At a minimum, the food service operation shall provide a meal menu schedule that reduces regimentation by providing a rotation schedule of at least 4 weeks, and provides vegetarian meals and special diets for medical or religious requirements.  Three (3) meals will be served at regular times during each twenty-four (24) hour period with no more than fourteen (14) hours between the evening meal and breakfast.

A)   The CADC shall make provision for special religious, medical and vegetarian diets.

B)   The CADC shall conduct a nutritional analysis of its institutional menus, including the adequacy of the food provided for religious, vegetarian and medical diets.  This analysis must be reviewed annually by the State.

Section 4.10   **Laundry.**  CADC will provide laundry services for the resident population of State prisoners six days a week, at no cost to prisoners for these services.  Laundry services must meet Cleary minimums.

Section 4.11   **Transportation.**  CADC will provide security and transportation to and from medical appointments, emergency medical care, designated airport, and court appearances.  CADC will be responsible for any supervision of the Prisoner during court appearances.

A)   CADC has the right to designate the method and company to provide transportation, subject to State review and pre-approval.

B)   The State will provide a correctional officer and security for Prisoners from Alaska to and from the drop-off and pickup point at the designated <u>Arizona</u> airport, or other State

---

Contract Prison Beds; CCA/CADC                    30                    Florence, Arizona ASPS #99-0001

approved airport.

C)   CADC's policy 9-103. Contractor must define the words "unusual incidents", subject to
State approval, and add language that: Contractor agrees to provide telephone
notification of unusual incidents within 24 hours and written notification within 48
hours; Contractor also agrees to cooperate if State requests a report and investigation of
the 'unusual incident'.

**Section 4.12 Prisoner Commissary.** The CADC will provide Alaska Prisoners with the
choice of purchasing commissary goods from either the existing commissary at the facility or
by mail from a vendor approved by the Alaska DOC. In order to be eligible to purchase items
from the CADC commissary, for each purchase, a Prisoner must waive the application of
Section V(J)(2) of the Cleary Final Settlement Agreement and Order using the following
language: "I hereby waive the application of Section V(J)(2) of the Cleary Final Settlement
Agreement and Order regarding the above purchase of commissary goods from the CADC
commissary." The proceeds of the commissary shall be utilized to establish and maintain the
commissary and for Prisoner benefits.

**Section 4.13 Mail.**

A)   Mailing. CADC will provide delivery of mail to Prisoners and send out mail from
prisoners in the Facility in compliance with Department Policy and Procedures (see
below).

B)   Postage. For indigent prisoners, the Facility will provide postage for five pieces of
mail per week, maximum of two pounds each. This is not intended to apply to the
shipment of excess personal property.

C)   Indigency costs. CADC shall adopt State standards for indigency for the purposes of
mail. The additional costs, not to exceed $200.00 per month, shall be passed through
and paid for by the State.

**Section 4.14 Telephones.** CADC agrees to provide three (3) telephones in each housing unit
that are available for Prisoner use to have free collect call and free local call access.

**Section 4.15 Religion.** CADC will provide adequate space within the Facility for religious
services to be held and provide programs in compliance with applicable ACA Standards, and
section 4.6.8 above.

**Section 4.16 Facility Supplies.** CADC will provide facility supplies, which includes general
hygiene items, office supplies and building support items such as cleaning supplies, mops,
buckets, linens, towels, etc.

**Section 4.17 Grievance Procedure.** CADC will provide the following formal grievance
procedure. State reserves the right to place Grievance and or Compliance Officer(s) at the
CADC Facility at the States expense.

---

Contract Prison Beds; CCA/CADC          31          Florence, Arizona  ASPS #99-0001

A)    Prisoners shall be allowed to file grievances with the CADC's Institutional Compliance Officer, CADC's Institutional Grievance and CADC's Compliance Coordinator, or other CADC employee as designated by the Warden, about any matter except classification and disciplinary decisions. Medical grievances are addressed separately as set forth below. CADC shall ensure that grievance forms are available and that grievance procedures be posted in all housing units.

B)    The grievance and its subject matter shall be recorded in a grievance log book and promptly investigated. A clear and concise written statement of findings and recommendations for disposition shall be forwarded to the Warden or Assistant Warden within 10 working days of filing the grievance. The Warden or Assistant Warden shall provide the Prisoner with a written response, including any corrective action taken, within 5 working days. In the event the grievance contains allegations about the Warden or Assistant Warden, CADC shall immediately forward the grievance to the Alaska Director of Institutions who shall direct that the matter be investigated and shall provide the Prisoner with the initial written response. CADC agrees to assist the Alaska Director of Institutions in investigating such grievances upon request.

C)    Prisoners may appeal the initial decision of the Warden to the Alaska Director of Institutions. Prisoners may appeal the initial decision of the Alaska Director of Institutions for grievances filed regarding the Warden or Assistant Warden to the Alaska Deputy Commissioner, who shall resolve the appeal with the assistance of the Department Grievance and Compliance Administrator. Appeals must be submitted to the CADC's institutional compliance officer or CADC's grievance administrator within 2 working days of the Prisoner's receipt of the initial decision. The appeal must be recorded in the grievance log book and copies forwarded to the Alaska Director of Institutions for determination.

D)    The CADC medical department shall respond to grievances regarding medical issues. The CADC Institutional Compliance Officer or CADC Grievance and Compliance Coordinator or equivalent shall forward a medical grievance to the medical department after it is recorded in the CADC Alaska Unit Prisoner grievance log book. The grievance log book shall have clear notations as to those entries that are medical versus non-medical grievances.

A CADC medical staff member who was not involved in the subject matter of the grievance shall be assigned to investigate the medical grievance and shall provide a response which contains clear and concise written findings. All medical grievances shall be forwarded along with a copy of the grievance log book to the Alaska DOC Health Care Administrator on a monthly basis on or before the tenth day of the following month. Prisoners may appeal medical grievance decisions to the Alaska DOC Health Care Administrator by submitting an appeal on the form provided by Alaska DOC to the CADC Institutional Compliance Officer or Facility's Grievance and Compliance Coordinator within 2 working days of the prisoner's receipt of the decision. The Facility's Institutional Compliance Officer or Facility's Grievance and Compliance Coordinator shall record the medical appeal in the grievance log book and forward the appeal to the Health Care Administrator for determination.

---

Contract Prison Beds; CCA/CADC                    32                    Florence, Arizona  ASPS #99-0001



**Section 4.18** **Security and Control**. CADC shall provide security and control in accordance with ACA Standards and CADC's policy and procedure at the Facility and during transportation of Prisoners away from the Facility. Security and control procedures must meet State Cleary requirements, including restraints in segregation unit requirements.

**Section 4.19** **Visitation**. Prisoners shall be provided with contact visitation at least one hour per week unless the Prisoner is in punitive segregation or an individual determination is made that such visitation poses an escape, smuggling or security risk.

A)    Prisoners shall be provided with extended contact visits of at least four hours per day for at least four days for approved persons who have traveled long distances upon advance written request.

B)    The Alaska DOC reserves the right to limit visitation of any person.

C)    CADC shall provide written notice to a Prisoner of the reasons for the denial of any visitation request.

D)    CADC may limit visitation of Prisoners convicted of a disciplinary infraction to secure visits with immediate family members only.

E)    All requests for contact visits must be pre-approved by Department Director of Institutions Office so that proper background checks are completed before the visit.

F)    Video Visitation. Both parties agree that if the State implements a Video Visitation program, that upon mutual agreement of parties, provisions for video visitation will be included in this contract.

**Section 4.20** **Law Library; Access to Courts and Legal Materials.**
A)    CADC agrees to furnish Prisoners with a law library that meets minimum ACA standards.

B)    Specific Alaska legal materials will be provided by Alaska DOC as specified in Appendix A and B to the Cleary Final Settlement Agreement and Order, or as otherwise specified by the State, and located in the Alaska law library and in the Alaska segregation unit.

C)    A monthly inventory of law library materials shall be provided to the Alaska DOC. The Alaska DOC shall be provided with immediate written notice of missing and/or damaged law library materials.

D)    CADC shall provide timely access to legal materials which are not available in their law library. Timely access is provided if CADC provides the requested materials within 10 days to two weeks for routine requests, within three to five days when the Prisoner has provided evidence of an ongoing civil or criminal court filing deadline which must be met, and within 40 hours, excluding weekends and holidays, when the Prisoner has to

---

Statement of Facts
Exhibit 1 - page 52 of 89

file a reply memorandum under state or federal court civil rules, or a filing deadline of less than 5 days is imposed.

Section 4.21  Discipline.

A) CADC shall impose discipline for only offenses listed in 22 AAC 05.400 and impose penalties only as set forth in 22 AAC 05. Also, CADC will utilize the hearing officer process, as mandated by the Cleary Final Settlement Agreement.

B) A Prisoner must be given a copy of a disciplinary report not more than 5 working days after the infraction or the date the Prisoner is identified as a suspect in the infraction, whichever occurs later. If the investigation is likely to jeopardize an ongoing investigation by the Alaska DOC, CADC, or a law enforcement agency, the report must be given to the Prisoner upon completion of the investigation.

C) The disciplinary report must include the citation of the rule violated, the details of the incident, a description of the disposition of any physical evidence, the identification of any known witnesses, or the notation that the infraction is based on information from an anonymous informant.

D) A hearing must be held within 7 working days after the prisoner is served with a copy of the incident report, unless a postponement is granted at the request of the Prisoner. The hearing may be postponed by CADC for up to 30 days for good cause shown and for an additional 30 days if extraordinary circumstances require further investigation. No more than six months may elapse from the date of the infraction to the hearing except where a criminal complaint has been brought against the Prisoner.

E) A Prisoner must be given 48 hours written notice of the hearing but may waive this notice requirement. The Alaska DOC will provide a notice form which shall be used.

F) The hearing shall be tape recorded. The Prisoner must be allowed to present witnesses and other evidence at the hearing. The hearing officer may decline to call a witness or restrict the introduction of other evidence for compelling reasons but must note the reasons on the record and on the form provided by Alaska DOC.

G) The writer of the disciplinary incident report, or other staff members who have relevant evidence must appear at the hearing if called as a witness.

H) A Prisoner is entitled to the assistance of a hearing advisor at a hearing unless the disciplinary matter concerns a minor infraction. A Prisoner has the right to have legal counsel attend a disciplinary hearing if the infraction may result in criminal charges.

I) The hearing shall occur in two phases. The adjudicative phase shall be directed at determining whether the Prisoner committed the offense and dispositive phase shall be directed at the sanction to be imposed.



Contract Prison Beds; CCA/CADC          34          Florence, Arizona  ASPS #99-0001



J)   A Prisoner is presumed innocent until proven guilty by a preponderance of the evidence presented at the hearing.

K)   If the Prisoner is found guilty of the infraction, the hearing officer shall issue a written decision within 5 working days after the hearing on the form provided by the Alaska DOC.

L)   The Prisoner may appeal the decision to the Warden using the form provided by the Alaska DOC within 3 working days of receipt of the written decision. The Prisoner shall have access to the tape of the disciplinary hearing for use in preparing the appeal. The Warden shall issue a decision on the appeal within 5 working days.

M)   The Prisoner may appeal a decision by the Warden denying the prisoner's appeal to the Alaska Director of Institutions using the form provided by Alaska DOC within 2 working days of his receipt of the decision. CADC shall promptly forward such appeal to the Alaska Director of Institutions.

N)   Execution of punishment must be stayed pending appeal to the Warden and Alaska Director of Institutions.

O)   Urinalysis testing levels shall be 50 nannograms for cannabinoids and at the lowest threshold possible under accepted testing methods for other substances. A Prisoner may request that a urine specimen identified as positive be retested by an independent laboratory as approved by the State. If a retest is of the initial test for marijuana metabolites, it shall be confirmed using gas chromatography/mass spectrometry. A request for a retest must be made in writing within 48 hours of receiving a disciplinary report indicating a positive urinalysis result. A Prisoner must also submit a completed commissary request form for the payment for the test. The State will pay for the test for indigent Prisoners and Prisoners who are not indigent but do not have sufficient funds at that time to pay for the test and CADC shall deduct the amount of the test from such prisoners' account and forward the funds to the State when funds become available.

Section 4.22  **Use of Force.**

A)   CADC employees shall be allowed to use force in accordance with applicable Federal and State Law, and only:

1)   While on the grounds of the Facility;
2)   While transporting or supervising Prisoners outside the Facility; and
3)   While pursuing escapees from the Facility.
4)   CADC must have verification of this authority in the state in which the Facility is located.



Contract Prison Beds; CCA/CADC                35                Florence, Arizona  ASPS #99-0001

B)    CADC employees shall be authorized to use only such non-deadly force as the circumstances require in the following situations:

    1)    To prevent the commission of a felony or misdemeanor, including escape;
    2)    To defend oneself or others against any physical assault;
    3)    To prevent serious damage to property;
    4)    To enforce institutional regulations and orders;
    5)    To prevent or quell a riot; and

C)    Use of non-deadly force will be governed by the principle that the staff shall use only that degree of force reasonably necessary under the circumstances to effect a lawful result.

D)    CADC employees shall use deadly force in accordance with federal and state law, ACA Standards and CADC Policy and Procedures. Firearms and other means of deadly force are to be used only as a last resort to prevent escape or apprehend an escapee or to prevent the loss of life or serious bodily harm.

Section 4.23  **Good Time.**  CADC shall provide specific information to the State for the purposes of awarding or forfeiture of good time. The final decision on awarding or forfeiture of good time rests with the State, although CADC shall be responsible for providing information as to performance and behavior of Prisoners.  Any recommendation by CADC to forfeit a prisoner's good time is subject to approval by the Contract Monitor in the Director of Institutions office, or the Deputy Director of Institutions.

Section 4.24  **Sentence Computation.**  CADC shall provide the State with data and information relating to sentence computation as requested. The final decision with respect to sentence computation rests with the State.

Section 4.25  **Records and Reports.**

A)    CADC shall utilize a Prisoner record and reporting system for the Facility in accordance with ACA Standards.  Prisoner records shall include medical, psychiatric, dental, counseling and classification records.  The system shall adhere to federal, state and local laws governing confidentiality.  Upon request, all records, reports and documents will be made available immediately to the Contract Monitor for review. Upon termination of confinement at CADC, CADC will forward a complete copy of the Prisoner's records to Alaska.

B)    The State shall furnish to CADC the criminal history, judgment and sentence, recent classification actions, institutional disciplinary history of major and high moderate infractions, and medical records of each Prisoner assigned to the Facility, and such other records as CADC may request.



Contract Prison Beds; CCA/CADC      36      Florence, Arizona  ASPS #99-0001

C)    Within 90 days following the receipt of a Prisoner from Alaska, and thereafter at six month intervals, CADC will report to the State on the Prisoner's progress, conduct, and adjustment, and recommend retention at CADC's Facility or return to Alaska.

D)    The CADC shall provide the Alaska DOC Grievance and Compliance Administrator with a monthly compliance report regarding the facilities' compliance with the Cleary Final Settlement Agreement and Order. This report shall be prepared and submitted by the CADC Grievance and Compliance Coordinator on or before the tenth day of the following month on a form provided by the Alaska DOC. The report shall be transmitted with a cover memorandum initialed by the CADC Grievance and Compliance Coordinator and Warden which certifies that the Warden has reviewed the report and is aware of any reported instances of non-compliance.

E)    The CADC shall provide the Alaska DOC with a monthly copy of the administrative segregation log book for the previous month on or before the tenth day of the following month. The log books to be utilized by the CADC will be provided by the Alaska DOC. The CADC will provide, if requested by the Alaska DOC, copies of any administrative segregation admission forms and related documentation that corresponds to the log book entries.

F)    The CADC shall provide the Alaska DOC with a monthly copy of the disciplinary log book for the previous month on or before the tenth day of the following month. The log books to be utilized by the CADC will be provided by the Alaska DOC. The CADC will provide, if requested by the Alaska DOC, copies of the disciplinary incident reports and related documentation that corresponds to the log book entries.

Section 4.26 **Return of Prisoners to State.**

A)    Upon demand by the State, CADC will turn over to the State any Alaska Prisoner; provided that, if at the time the State seeks to remove a Prisoner from CADC's Facility, there is pending against such Prisoner within the State of Arizona any criminal charge, or if the Prisoner is formally accused of having committed within Arizona a criminal offense, the Prisoner will not be returned without the consent of the local prosecuting agency.

B)    Upon demand by CADC, the State will retake any Prisoner within thirty working days of receiving the request, unless a different deadline is agreed to by the parties.

C)    Any Prisoner who is within ninety (90) days of release from incarceration or is released by court order, and so desires, shall promptly be returned to the State. In addition, a prisoner may be returned to the State if any of the following criteria apply:
1)    Court order;
2)    Prisoner is eligible for sex offender program and wants to participate. State



Contract Prison Beds; CCA/CADC          37          Florence, Arizona  ASPS #99-0001

Chief Classification Officer shall make final determination;
3)   Parole date;
4)   Classification Reviews;
5)   Life Threatening Situation;
6)   Serious Mental/Medical problem beyond CADC capabilities.

D)   Any Prisoner who has been accepted for probation or parole supervision in any state under terms of the Interstate Probation-Parole Compact will remain at the CADC's Facility until approval for release is received from the Central Classification Unit of the State.

Section 4.27 **Prisoner Work.**

A)   Prisoners assigned to work programs shall be compensated by CADC. CADC shall bill and be reimbursed for the amount of these wages by the State. All Prisoner wages will be placed in a trust account to be used solely by that Prisoner. Any balance remaining when the prisoner is returned to the State shall be sent to the State for credit to the Prisoner's account. CADC agrees to structure the work program by adjusting the number of hours, etc., so that the maximum amount of gratuities paid to prisoners is as pre-agreed by both parties.

B)   CADC will afford Prisoners the opportunity to participate in programs of occupational training and in industrial or other work consistent with sections 4.7.3 and 4.7.9 of this Contract.

C)   CADC may impose on Prisoners the same work required of other Prisoners at CADC's Facility. However, CADC may not require a Prisoner to participate in any training, industrial or other work contrary to the laws of Alaska.

D)   Upon approval of State, CADC may dispose of all products produced by any Alaska Prisoner while participating in such training or employment, and will bear all costs and retain all proceeds therefrom.

E)   In the case of craft programs, a Prisoner may dispose of the products of his labor and retain the proceeds of any sale of his work in accordance with the rules of CADC, subject to approval by State.

Section 4.28 **Classification.**

A)   The Alaska DOC will classify all Alaska Prisoners except for admissions to administrative segregation and removal from rehabilitative programs or as otherwise agreed by the parties in regard to a particular Prisoner.

---

Statement of Facts
Exhibit 1 - page 57 of 89

B)    CADC Case Managers will furnish the Alaska DOC with a progress report on a Prisoner at least one week before a classification hearing is to be held, or attend a hearing to provide the progress report. The progress report will be a synopsis of overall Prisoner performance and behavior for the previous year.

C)    The following procedures shall be followed for classifying a Prisoner to administrative segregation:

    1)    A Prisoner may be placed in administrative segregation only upon a determination that the Prisoner:
        (a)    Is incapacitated;
        (b)    Is suffering or suspected of suffering from a communicable disease;
        (c)    Has had segregation recommended by a physician or a physician's assistant or mental health professional based upon a physical or mental condition;
        (d)    Requests in writing to be placed in segregation and there exists a valid reason for such placement;
        (e)    Requires protective custody;
        (f)    Is being held as a material witness;
        (g)    Presents a substantial and immediate threat to the security of the facility; or
        (h)    Presents a substantial and immediate threat to the public and no less restrictive alternative is likely to address such threat.

    2)    A Prisoner may be immediately placed in administrative segregation if reasonable cause exists to believe one of the above conditions exist and the conditions present a substantial and immediate threat to self, others, or the security of the facility. The Prisoner must be provided with written notice of the reasons on the form provided by Alaska DOC. No Prisoner may be kept in administrative segregation for more than 24 hours without the written determination of the Warden or Assistant Warden specifying the facts that create a substantial and immediate threat to self, others or the security of the facility and which justifies detention until a hearing can be held.

    3)    Except for the emergency placement described above, no Prisoner may be placed in administrative segregation without written notice of the reasons for such placement and a hearing to determine if sufficient cause justifies such placement.

    4)    A hearing must be held within 3 working days of an emergency placement. A Prisoner must be provided with 48 hours advance notice of a hearing and of his right to the assistance of a hearing advisor or the presence of counsel if the hearing is in connection with behavior that could constitute a felony offense. A hearing must be held every 30 days to establish that continued placement in

---

Contract Prison Beds; CCA/CADC                39                Florence, Arizona ASPS #99-0001

segregation is justified under one of the reasons stated above.

5) The hearing officer shall be trained in Alaska classification procedures and may not serve as hearing officer if the hearing officer has any official connection to the behavior which gave rise to the placement.

6) The hearing shall be tape-recorded and the tape shall be retained for 12 months or until court proceedings regarding the placement are completed.

7) The Prisoner has the right to challenge the basis for placement in segregation and to present evidence and witnesses unless compelling reasons exist to limit this right. The facility must establish that the Prisoner satisfies one of the criteria for placement in administrative segregation.

8) The hearing officer shall make written findings and a recommendation to the Warden as to whether the placement in segregation is justified and the Warden shall make the final determination.

9) The Prisoner shall be allowed to appeal the decision of the Warden to the Alaska Director of Institutions using forms provided by the Alaska DOC. The appeal shall be submitted within 5 working days of the Warden's decision. CADC will promptly forward such appeals to the Alaska Director of Institutions.

Section 4.29 **Hearings.**

A) CADC will provide adequate facilities for any hearings by Alaska authorities.

B) Upon request of the State, CADC may hold any hearing necessary to establish facts upon which a decision must be made by the State with respect to a Prisoner, prepare and submit the record of such hearing with a finding of fact and a recommendation, if appropriate, to the State.

C) CADC shall establish a pool of trained hearing advisors to investigate and assist Prisoners at low moderate or higher disciplinary hearings and administrative segregation hearings. A Prisoner shall have the opportunity to select from a list of at least two of the advisors. The advisor shall meet with the Prisoner at least 36 hours before the hearing to advise and assist the Prisoner regarding the hearing.

Section 4.30 **Escape.** In case of escape from the CADC Facility, CADC will assist, within the bounds allowed under <u>Arizona</u> law, law enforcement officials in the recapture efforts, at CADC's expense. If a Prisoner escapes from the custody of CADC and is thereafter found in another state outside of <u>Arizona</u>, it will be the responsibility of the State(s) to extradite the Prisoner, at CADC's expense.

Contract Prison Beds; CCA/CADC          40          Florence, Arizona  ASPS #99-0001

Section 4.31 **Death of a Prisoner.**

A)    CADC will report immediately to the State the death of any Prisoner, furnish all information requested, and follow the instructions of the State with regard to disposition of the body. The State will be responsible for the cost of disposition of the body including shipment from the Center. The State will notify the relatives of the deceased Prisoner, if any, as soon as practicable thereafter.

B)    The provisions of this section will not affect the liability of any relative or other legally liable person for the disposition of the deceased or for any expenses therewith.

C)    The State, at its option and at its expense, may return the deceased Prisoner to its jurisdiction for burial, or arrange for burial and all matters incident thereto in Arizona.

D)    CADC will forward to the State a certified copy of the death certificate for the deceased Prisoner.

Section 4.32 **Public Information and Publicity**

A)    CADC may release any non-exempt public record information which it possesses regarding State Prisoners. CADC will not release public record information which is exempt from public disclosure, or any non-public record information which it possesses regarding State Prisoners. CADC will refer to the State requests for public information which it does not possess, public record information which may be exempt from public disclosure pursuant to Alaska laws, and non-public information.

B)    CADC will comply with Department Policy and Procedure 105.02, Media and Public Relations with regard to all public information release and Prisoners access to media (copy of policy, see attachments).

C)    CADC will not knowingly subject any Prisoner to unwanted publicity.

D)    Nothing in this section prevents official use of any information regarding a Prisoner.

Section 4.33 **Legal Proceedings.**

A)    The State will defend any post conviction action, including appeals and writs of habeas corpus, by any Prisoner in an Alaska court challenging the underlying judgment of conviction or the administration of the sentence imposed, at no cost to CADC.

B)    CADC will defend, at its expense, any actions filed against it by a Prisoner which challenge conditions of confinement operational policies, treatment by staff, or other

---



Contract Prison Beds; CCA/CADC               41               Florence, Arizona  ASPS #99-0001