matters related to confinement at CADC, except that the State will defend any challenge to the State's placement of specific Prisoners in the Center.

C)    CADC and the State will cooperate in other matters of mutual interest in the defense of transfer related litigation.

D)    The State will provide access to Alaska courts to its prisoners transferred to CADC in the same manner as such access is provided to prisoners in Alaska or in a different manner, at the option of the State.

Section 4.34  **Inspections.**  The State may inspect CADC, at all reasonable times, to determine if it maintains standards of care and discipline not incompatible with those of the State, and that all prisoners therein are treated equitably, regardless of race, sex, religion, color, creed, or national origin.

Section 4.35  **Civil Rights Act.**  CADC shall comply with the requirements of the Civil Rights Act of 1964, as amended, in employing staff, serving clients, and as otherwise appropriate.

Section 4.36  **Americans with Disabilities Act.**  CADC shall comply with the requirements of the Americans with Disabilities Act in employing staff, serving clients and as otherwise appropriate.  The cost of compliance will be the responsibility of CADC.

Section 4.37  **Drug Free Workplace.**  CADC shall comply with the requirements of the applicable State and Federal statutes regarding use and abuse of prohibited substances at the work place.

Section 4.38  **Contract Monitor or Contract Action Officer.**  The Department of Corrections will assign an individual or individuals to serve as Contract Monitor/Contract Action officer(s) (CAO) for the purpose of monitoring and evaluating CADC's performance, to monitor CADC's compliance with the Cleary Final Settlement Agreement and Order and to serve as departmental liaison with CADC.  The CAO or another individuals as designated by the CAO or Alaska DOC may be located on a temporary or permanent basis at the CADC Facility and will be provided access to Alaska Prisoners, CADC employees, and CADC records as deemed necessary by the CAO or Alaska DOC.

Section 4.39  **Audit Requirements.**  The State reserves the right, at a reasonable time and place, to audit the books and records of the CADC, to the extent that the books and records relate to the contract.  A person or firm receiving a contract, change order, or contract modification for which cost or pricing data is required, shall maintain books and records that relate to the cost or pricing data for three years after the date of final payment under the contract.  Audits will be conducted by departmental personnel or contract agents of the Department of Corrections.

---

Contract Prison Beds; CCA/CADC              42              Florence, Arizona  ASPS #99-0001

Section 4.40 <u>Accounting Procedures.</u> CADC agrees:

A)     Restitution Payments. CADC shall separate restitution payment checks into 5 groups as required by the State's accounting office. Restitution payments will be batched into one of 5 institutional groups, and further separated by name and by amount, on forms or disk copy provided by the State.

B)     Gate Money, Restitution and Permanent Fund transactions shall be referenced by Prisoners name and social security number.

Section 4.41 <u>Policy and Procedures.</u> CADC shall adopt Alaska DOC Policies and Procedures regarding removal from programs (P&P No. 808.04), administrative segregation (P&P No. 804.01), maximum custody housing (P&P No. 735.01), indigency (P&P No. 302.07), counseling and mental health (P&P No. 807.13), medical and dental care (P&P No. 807.12), prisoner grievances (P&P No. 808.03), visitation (P&P No. 810.02), prisoner discipline (P&P No. 809.04), classification procedures (P&P No. 701.01), and hearing advisors (P&P No. 735.04). Also, media and public relations, 105.02; food service standards, 805.01; art and craft programs, 815.04; and the Cleary Final Settlement Agreement and subsequent court orders.

A)     CADC may revise the Alaska P&Ps to conform to CADC's operational format only as approved by the Alaska DOC.

B)     CADC shall develop a combined policy and procedures manual for operations, and provide a copy to the Director of Institutions office.

## ARTICLE 5
## EMPLOYEES

Section 5.1 <u>Independent CADC.</u> CADC is associated with the State only for the purposes and to the extent set forth in this Contract. With respect to the performance of the management services set out herein, CADC is and shall be an independent contractor and, subject to the terms of this Contract shall have the sole right to manage, control, operate and direct the performance of the details of its duties under this Contract. CADC's agents and employees shall not accrue leave, retirement, insurance, bonding, use of State vehicles or any other benefit afforded to the employees of the State as a result of this Contract. CADC, its agents and employees shall not be considered agents or employees of the State.

Section 5.2 <u>Personnel.</u> CADC shall provide sufficient qualified and trained personnel to deliver twenty-four (24) hour care and supervision to incarcerated individuals, as well as administrative and support service personnel for the overall operation of the Facility. Prior to hiring each employee, CADC shall conduct a thorough background check of each applicant.

Contract Prison Beds; CCA/CADC                43                Florence, Arizona ASPS #99-0001



CORRECTIONS CORPORATION OF AME

Damon Hininger
*Vice President, Business Analysis*

May 22, 2001

Ms. Allen J. Cooper
Director of Institutions
Alaska Department of Corrections
4500 Diplomacy Drive, Suite 207
Anchorage, Alaska  99508-99518

Dear Allen:

In accordance with Section 6.1 (C) of our contract with the State of Alaska we are due a compensation rate increase effective July 1, 2001. The Consumer Price Index for January 2001 was 3.7%. We are hereby providing you notice of an increase to the per diem of 2.0% pursuant to our contract. Listed below are the new per diem rates that will be reflected on your monthly invoices from July 1, 2001 through June 30, 2002.

| | | |
|---|---|---|
| 0-626 beds | @ | $ 57.22 |
| 627-852 beds | @ | $ 55.66 |
| 853-999 beds | @ | $ 55.14 |
| 1000 & above | @ | $ 54.62 |

Please feel free to give me a call if you have any questions. We look forward to continuing to serve the needs of the State of Alaska.

Sincerely,

Damon T. Hininger

DH/tr

Received
04-01

cc:  Warden Bruno Stolc
      Kevin Ashburn

10 Burton Hills Boulevard, Nashville, Tennes 37215



Section 5.3 <u>**Correctional Officer Certification Level.**</u> The state requires that the correctional officers employed by the contractor at this facility must have a prescribed training academy approved by the Director of Institutions and have a NCIC background check supplied by the State of Alaska. The state reserves the right to conduct further background investigations if deemed necessary by the state.

## ARTICLE 6
## COMPENSATION AND ADJUSTMENTS

Section 6.1 <u>**Management Payment.**</u> The State shall pay by State Check or Warrant to a depository to be designated by CADC, the following amounts under the Contract to CADC:

A)     The State will pay CADC a rate of Fifty Five Dollars ($55.00) per Prisoner per Prisoner Day. The state shall pay CADC a minimum amount per day of Thirty-Four Thousand, Four Hundred and Thirty Dollars ($34,430.00) to guarantee a minimum of 626 prisoner beds, unless rates below are in effect. Payment shall begin in full on date of first arrival of prisoners to CADC.

B)     If the State requires an increase in the number of prisoners above 626, the number of additional prisoners shall be charged to the State on the on the basis of the number of filled prisoner beds: At the rate of <u>$53.50</u> dollars per prisoner per prisoner day, for each occupied bed, from 627 up to a total of <u>852</u> prisoners; At the rate of <u>$53.00</u> dollars per prisoner per prisoner day, for each occupied bed, from 853 up to a total of <u>999</u> prisoners; And at the rate of <u>$52.50</u> dollars per prisoner per prisoner day, for each occupied bed, at 1000 and above prisoners. These costs are summarized as follows:

| | | |
|---|---|---|
| 0-626 beds | @ | $55.00 |
| 627-852 beds | @ | $53.50 |
| 853-999 beds | @ | $53.00 |
| 1000 & above | @ | $52.50 |

When the State increases the population to the next tier level, the new tier level cost supplied by the contractor will apply to all of the beds under contract at the facility, not just those in the tier level. The parties agree that the price per bed may be negotiated to a lower figure based on the number of additional prisoner beds required by the state.

C)     If the contract is renewed the prices may be adjusted. Price adjustments, if requested in writing 30 days prior to each June 30, will be made in accordance with the percentage change in the US Department of Labor Consumer Price Index (CPI-U). Price adjustments may be made up or down according to the CPI-U. Nationwide figures will be used. The adjustment maximum cap is 2% per year. The adjustment rate will be

---

Contract Prison Beds; CCA/CADC         44         Florence, Arizona ASPS #99-0001

determined by using the CPI percentages issued in January for the previous year. The 1999 adjustment will be based on the CPI-U percentage issued for 1998. If requested, the first adjustments in this section will go into effect on July 1, 1999, and each July 1st, thereafter.

D)    Payment for all medical, mental health, and dental expenses incurred outside the Facility as set forth in 4.8 hereof on behalf of the Prisoners.

E)    All transportation costs to be assigned to the State. Note: CADC will be responsible for the cost of transporting Prisoners within Arizona. The State will be responsible for all other transportation costs, unless the Facility becomes unusable and/or the State's Prisoners are transferred to another facility, other than a State facility. In such cases, CADC will pay the transportation costs.

F)    All amounts payable under the Contract shall be due within 30 days of any billing period. Payments not received within such 30 day period shall be subject to a late fee or penalty at a rate not to exceed applicable law. This does not include payments subject to a legitimate dispute, as detailed herein, between parties.

**Section 6.2   Billings.** CADC shall submit a monthly statement each calendar month, within 15 days of the end of each month for services rendered under this contract. The State shall pay such invoices within 30 days of the end of each monthly billing period, except that this does not include payments subject to legitimate dispute as detailed herein.

**Section 6.3   Billing Disputes.** If the amount claimed due by CADC is disputed by the State, then the State, on or before the date the invoice is payable, shall advise CADC of the basis for the dispute and, in the manner provided above, pay the amount of such invoice which is not in dispute. If the parties cannot resolve the dispute within 30 days of such advise either party may initiate dispute proceedings as provided herein.

**Section 6.4   Change in Scope of Services.** The State recognizes that CADC has entered into this Contract to provide management services based upon the current state and federal law and ACA Standards in effect as of the date of this Contract. If there are any changes in ACA Standards, federal or Alaska laws, government regulations or court orders, which changes necessitate a change in the scope of services furnished hereunder so as to increase the cost of operating and managing the Facility or performing other services contemplated in this Contract, the parties agree to review the required changes and negotiate a modification of the contract to provide adequate compensation for the additional services. CADC shall provide reasonable notice, in writing, and documentation or information supporting the additional compensation required by CADC to offset the increase in costs for furnishing the additional services. The State shall review this information and provide the additional compensation, retroactive to the date the initial costs were incurred.

---

Contract Prison Beds; CCA/CADC          45          Florence, Arizona ASPS #99-0001



Section 6.5 **Failure to Agree on Compensation for Additional Services.** If the parties cannot agree on compensation for additional services within sixty (60) days of the date CADC requests such compensation, the State and CADC may initiate resolution through dispute procedures provided herein.

Section 6.6 **Taxes.** CADC shall pay all local, state and federal taxes, if any are incurred, with respect to the operation of the Facility.

Section 6.7 **Utilities.** CADC shall pay all utility charges, incurred or imposed with respect to the Facility.

## ARTICLE 7
## INDEMNIFICATION AND INSURANCE

Section 7.1 **Indemnification.** Article 7 replaces and supersedes any Appendix B2 form that may be attached to this contract inadvertently. CADC shall indemnify, save harmless and defend the state, its officers, and its employees from any and all claims or actions for injuries or damages sustained by any person or property arising directly or indirectly as a result of any act or omission of CADC, subcontractor or anyone directly or indirectly employed by them in the performance of this contract, including but not limited to:

A)    Any and all claims, including civil rights claims arising from the provisions of this Contract, including but not limited to, any and all claims arising from:

    1)    Any breach or default on the part of CADC in the performance of the Contract;

    2)    Any claims or losses for services rendered by CADC, by any person or firm performing or supplying services, materials or supplies in connection with the performance of the contract.

    3)    Any claims or losses to any person injured or property damaged from the acts or omissions of CADC, its officers, agents, or employees in the performance of the Contract;

    4)    Any claims or losses by any person or firm injured or damaged by CADC, its officers, agents, or employees by the publication, translation, reproduction, delivery, performance, use, or disposition of any data processed under the Contract in a manner not authorized by the Contract, or by federal, state, county, or Town regulations or statutes;

    5)    Any failure of CADC, its officers, agents, or employees to observe the laws of the United States and the State of Arizona, including but not limited to labor laws and minimum wage laws; and

    6)    Any claim or losses resulting from an act of a Prisoner while under CADC's

---

Contract Prison Beds; CCA/CADC            46            Florence, Arizona  ASPS #99-0001

authority.

**B)**  All costs, reasonable attorney's fees, expenses, and liabilities incurred in or about any such claim, action, or proceeding brought thereon.

**Section 7.2  Insurance.**  Without limiting CADC's indemnification, it is agreed that CADC shall purchase at its own expense and maintain in force at all times during the performance of services under this agreement the following policies of insurance.  Where specific limits are shown, it is understood that they shall be the minimum acceptable limits.  If CADC's policy contains higher limits, the state shall be entitled to coverage to the extent of such higher limits. Certificates of Insurance must be furnished to the Contracting Officer prior to beginning work and must provide for a 30-day prior notice of cancellation, non-renewal or material change. Failure to furnish satisfactory evidence of insurance or lapse of the policy is a material breach and grounds for termination of CADC's services.

**A)**  Workers' Compensation Insurance:  CADC shall provide and maintain in force statutory workers' compensation insurance coverage for all employees of CADC engaged in work under this contract.  Coverage must extend to include all states in which employees are engaging in work and employer's liability protection not less than $500,000 per person, $500,000 per occurrence.  Policy must be endorsed to waive rights of subrogation against the State of Alaska.

**B)**  Comprehensive (Commercial) General Liability Insurance:  CADC shall provide and maintain in force comprehensive (commercial) general liability insurance, with coverage limits not less than $5,000,000 combined single limit per occurrence and annual aggregates where generally applicable and shall include premises-operations, independent contractors, products, completed operations, broad form property damage, contractual liability coverage for indemnification clause in Section 7.1, and personal injury endorsements.  This insurance shall contain a "cross liability" or "severability of interest" clause or endorsement and the State of Alaska shall be named additional insured.  This insurance shall be considered to primary of any other insurance carried by the State through self insurance or otherwise.

**C)**  Comprehensive Automobile Liability Insurance:  CADC shall provide and maintain in force comprehensive automobile liability insurance covering all owned, hired and non-owned vehicles with coverage limits not less than $1,000,000 combined single limit per occurrence and annual aggregate.  This insurance shall contain a "cross liability" or "severability of interest" clause or endorsement and the State of Alaska shall be named additional insured.  This insurance shall be considered to primary of any other insurance carried by the State through self insurance or otherwise.

**D)**  Professional Liability Insurance:  CADC shall provide and maintain in force professional liability insurance or a comparable policy form providing jail keepers' legal liability insurance coverage for errors, omissions or wrongful acts of CADC, subcontractor or anyone directly or indirectly employed by them in the performance of services this contract with limits not less than $5,000,000 combined single limit per occurrence and annual aggregate.

---

Contract Prison Beds; CCA/CADC                47                Florence, Arizona  ASPS #99-0001

## ARTICLE 8
## DEFAULT AND DETERMINATION,
## IMMEDIATE COMPLIANCE AND LIQUIDATED DAMAGES

**Section 8.1  Immediate Compliance**  If the State Contract Monitor (Contract Action Officer or the Director of Institutions) determines that CADC is not operating in compliance with a term or condition of the Contract which in the opinion of the Monitor or Director may adversely affect the security of the Facility or which may present a hazard to the safety or health of Prisoners or other individuals, CADC shall be notified in writing (or verbally if it is believed an emergency situation exists).  The notice shall direct CADC to immediately correct the noncompliance.

A)    CADC shall immediately notify the State Contract Monitor of the proposed corrective action.  If the Monitor does not object to the proposed corrective action, CADC shall immediately implement said corrective action.

B)    If the Monitor disagrees with the proposed corrective action or if CADC fails to notify the Monitor immediately of its proposed corrective action, the Commissioner of the Department shall be notified.  The Commissioner shall either agree with CADC or specify corrective action which CADC shall immediately implement.

C)    Notwithstanding any provision contained herein to the contrary, in such a circumstance, CADC shall immediately implement the corrective action specified by the Commissioner before any appeal is taken.

D)    In the event CADC disagrees with the determination of noncompliance or designated corrective action, an appeal may be taken to the Commissioner.  In no event shall the corrective action be delayed pending appeal to the Commissioner.

E)    Upon examination, if the Commissioner determines in his or her sole discretion that a noncompliance did not exist or that the required corrective action was excessive, the Commissioner shall authorize payment to CADC of the actual expense incurred in taking said corrective action or excessive corrective action upon receipt of appropriate documentation substantiating said expense from CADC.

Section 8.2  **Breach**

A)    A party shall be deemed to have breached the Contract if any of the following occurs:

1)    Failure to perform in accordance with any term or provision of the Contract;

2)    Partial performance of any term or provision of the contract; and

3)    Any act prohibited or restricted by the Contract.

For the purposes of this article, items 1) through 3) above shall be hereinafter be

---

Statement of Facts
Exhibit 1 - page 68 of 89

referred to as "Breach".

B)    In the event of a breach by CADC, the State shall have available the following remedies as described further herein:

1)    Actual damages and any other remedy available at law or equity;
2)    Liquidated Damages;
3)    Partial Default; Partial Recovery; and/or
4)    Termination of the Contract.

C)    In the event of Breach by CADC, the Contract Monitor shall provide CADC written notice of the Breach and a time period to cure said Breach described in the notice. In the event CADC disagrees with the Monitors determination of Breach, period to cure, or initiation of liquidated damages, CADC shall notify the Department's Commissioner in writing, provided, however, any appeal to the Commissioner shall not toll or otherwise affect the period to cure. The decision by the Commissioner shall be final and binding. In the event CADC fails to cure the Breach within the time period provided, then the State shall have available any and all remedies described herein. In the event the Breach is not cured and in the event the State elects to invoke liquidated damages said liquidated damages shall commence on the date the cure period expires; provided, however, if the Commissioner determines CADC's management team has concealed or mislead the State concerning the Breach, the liquidated damages shall commence on the date of the Breach. For purposes stated herein, CADC's management team is defined as consisting of persons in the rank of shift supervisor or above. This subsection regarding notice and opportunity to cure shall not be applicable in the event of successive or repeated Breaches of the same nature, or in the event the Monitor or Commissioner invokes the immediate compliance provisions of Sections of this contract.

Section 8.3  **State Breach**

A)    In the event of a Breach of Contract by the State, CADC shall notify the State in writing within thirty (30) days of any Breach of contract by the State. Said notice shall contain a description of the Breach. The State shall be afforded a forty-five (45) day period in which to effect a cure or in which to take reasonable steps to effect a cure; provided, however, that if the alleged Breach concerns the State's failure to make payment under this Contract, the State shall have sixty (60) days after the notice to effect a cure unless the payment is the subject of a dispute between the parties.

B)    Failure by CADC to provide the written notice described in subsection (a) shall operate as an absolute waiver by CADC of the State's Breach.

C)    With the exception of the provisions contained in subsection (f) herein, in no event shall any Breach on the part of the State excuse CADC from full performance under this Contract.

D)    In the event of Breach by the State, CADC may avail itself of any remedy at law in the forum with appropriate jurisdiction; provided, however, failure by CADC to give the State written notice and opportunity to cure as described in this Section operates as a waiver of the State's Breach.

---

E)   Failure by CADC to file a claim before the appropriate forum in Alaska with jurisdiction to hear such claim within one (1) year of the notice described in subsection (a) shall operate as a waiver of said claim in its entirety. It is agreed by the parties this provision establishes a contractual period of limitations for any claim brought by CADC.

F)   In the event the State fails to make any payment due under this Contract within the cure period specified herein and the amount not paid exceeds one hundred thousand dollars ($100,000.00), CADC may terminate the Contract upon 90 days prior written notice to the Commissioner, provided, however, CADC may terminate this Contract only upon the State's failure to pay an amount which is not in dispute.

## Section 8.4   Liquidated Damages

A)   In the event of a Breach by CADC described in this Contract or Appendix F, the State may withhold as liquidated damages the amounts designated on Appendix F from any amounts owed CADC.

B)   The State shall notify CADC in writing of the Breach and the amounts to be withheld as liquidated damages.

C)   Liquidated damages shall be assessed in conformance with Section 8.2(c).

D)   The parties agree that due to the complicated nature of CADC's obligations under this Contract it would be difficult to specifically designate a monetary amount for a Breach by CADC designated in Appendix F as said amounts are likely to be uncertain and not easily proven. CADC hereby represents and covenants that it has carefully reviewed the liquidated damages contained in Appendix F and agree that said amounts are the liquidated damages resulting from negotiation between the parties, represent a reasonable relationship between the amount and what might reasonably be expected in the event of Breach, and are a reasonable estimate of the damages that would occur from a Breach.

E)   It is hereby agreed between the parties that the liquidated damages represent solely the damages and injuries sustained by the State in losing the benefit of the bargain with CADC and do not include:

1)   Any injury or damage sustained by a third party and CADC agrees that the liquidated damage amount is in addition to any amounts CADC may owe the State pursuant to the indemnity provision contained in Article 7 or otherwise; and

2)   Any damage sustained to the Facility or property located therein as a result of CADC's Breach.

F)   The State may continue to withhold the liquidated damages or a portion thereof until CADC cures the Breach, the State exercises its option to declare a Partial Default, or the State terminates the Contract.

G)   The State is not obligated to assess liquidated damages before availing itself of any



Contract Prison Beds; CCA/CADC                50                Florence, Arizona  ASPS #99-0001

other remedy.

H) The State may chose to discontinue liquidated damages and avail itself of any other remedy available under this Contract or at law or equity; provided, however, CADC shall receive a credit for said liquidated damages previously withheld except in the event of a Partial Default.

## Section 8.5  **Partial Default**

A) In the event of a Breach by CADC, the State may declare a Partial Default.

B) If CADC fails to cure the Breach within the time period provided in the notice pursuant to Section 8.2(c), then the State may declare a Partial Default and provide written notice to CADC of the following:

   1) The date upon which CADC shall terminate providing the service associated with the Breach; and

   2) The date the State will begin to provide the service associated with the Breach.

The State may revise the time periods contained in the notice upon written notice to CADC.

C) In the event the State declares a Partial Default, the State may withhold from the amounts due CADC the greater of:

   1) Amounts which would be paid CADC to provide the defaulted service as provided in subsection (e); or

   2) The cost to the State of providing the defaulted service, whether said service is provided by the State or a third party;

together with any other damages associated with the Breach.

D) To determine the amount CADC is being paid for any particular service, the State shall review CADC's budget. The Commissioner or Commissioner's designee shall make the final and binding determination of said amount.

E) The State may assess liquidated damages against CADC pursuant to Section 8.4 for any failure to perform which ultimately results in a Partial Default with said liquidated damages to cease when said Partial Default is effective.

F) Upon Partial Default, CADC shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

---

Contract Prison Beds; CCA/CADC       51       Florence, Arizona  ASPS #99-0001



G)    CADC agrees to cooperate fully with the State in the event a Partial Default is taken.

### Section 8.6   Termination

A)    In the event of a Breach by CADC, the State may terminate the contract immediately or in stages.

B)    CADC shall be notified of the termination in writing signed by the Commissioner. Said notice shall hereinafter be referred to a Termination Notice.

C)    The Termination Notice may specify either that the termination is to be effective immediately, on a date certain in the future, or that CADC shall cease operations under this Contract in stages.

D)    CADC agrees to cooperate with the State in the event of a termination, Partial Default or Partial Takeover.

E)    In the event of a termination, the State may withhold any amounts which may be due CADC without waiver of any other remedy or damages available to the State at law or at equity.

F)    In the event of a termination, CADC shall be liable to the State for any and all damages incurred by the State including but not limited to transportation of Prisoners, activation of the National Guard or any other state agency, expenses incurred by the State to staff the Facility, and any and all expenses incurred by the State to incarcerate the Prisoners which exceed the amount the State would have paid CADC under this Contract.

### Section 8.7   Partial Takeover

A)    The State may, at its convenience and without cause, exercise a partial takeover of any service which CADC is obligated to perform under this Contract, including but not limited to any service which is the subject of a subcontract between CADC and a third party, although CADC is not in Breach (hereinafter referred to as "Partial Takeover"). Said Partial Takeover shall not be deemed a Breach of Contract by the State.

B)    CADC shall be given at least thirty (30) days prior written notice of said Partial Takeover with said notice to specify the area(s) of service the State will assume and the date of said assumption.

C)    Any Partial Takeover by the State shall not alter in any way CADC's other obligations under this Contract.

D)    The State may withhold from amounts due CADC the amount CADC would have been

---

Contract Prison Beds; CCA/CADC     52     Florence, Arizona  ASPS #99-0001



paid to deliver the service as determined by the Commissioner. The amounts shall be withheld effective as of the date the State assumes the service.

E)    Upon Partial Takeover, CADC shall have no right to recover from the State any actual, general, special, incidental, consequential, or any other damages whatsoever of any description or amount.

**Section 8.8**  **Termination Due to Unavailability of Funds or Court Order.**  The payment of money by the State under any provisions hereto is contingent upon the availability of funds appropriated to pay the sums pursuant to this Contract. In the event funds for this Contract become unavailable due to non-appropriation, or if the State is ordered not to transfer Prisoners to CADC by a court of competent jurisdiction, the State shall have the right to terminate this Contract without penalty, upon the State retaking all Prisoners from CADC and payment of all amounts due under the Contract.

**Section 8.9**  **Waiver.**  No waiver of any breach of any of the terms or conditions of this Contract shall be held to be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

# ARTICLE 9
## MISCELLANEOUS

**Section 9.1**  **Disputes.**  If the parties are unable to resolve any disputes arising hereunder, they may submit the matter to arbitration in accordance with American Arbitration Association procedures.

**Section 9.2**  **Equal Employment Opportunity and Affirmative Action**  The party states ascribe to principles of equal employment opportunity and affirmative action.

**Section 9.3**  **Binding Nature.**  This Contract shall not be binding upon the parties until it is approved and executed by the parties.

**Section 9.4**  **Invalidity and Severability.**  In the event that any provision of this Contract shall be held to be invalid, such provision shall be null and void, the validity of the remaining provisions of the Contract shall not in any way be affected thereby.

**Section 9.5**  **Counterparts.**  This Contract may be executed in multiple counterpart, each of which shall be deemed to be an original and all of which shall constitute one Contract, notwithstanding that all parties are not signatories to the original or the same counterpart, or that signature pages from different counterpart are combined, and the signature of any party to

---



any counterpart shall be deemed to be a signature also and may be appended to any other counterpart.

Section 9.6    **Interpretation.**  The headings contained in the Contract are for reference purposes only and shall not affect the meaning or interpretation of this Contract.

Section 9.7    **Terminology and Definitions.**  All personal pronouns used in this Contract, whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural and the plural shall include the singular.

Section 9.8    **Venue.**  The Contract shall be interpreted by the laws of the State of Alaska, and Anchorage shall be the venue in the event any action is filed to enforce or interpret provisions of this Contract.

Section 9.9    **Prosecution Costs.**  The contractor will be responsible for the prosecution costs resulting from crimes committed by a prisoner while that prisoner is being held by the contractor under this contract.

Section 9.10    **Release.**  CADC, upon final payment of the amount due under this Contract, releases the State, its officers and employees, from all liabilities, claims and obligations whatsoever arising from or under this Contract. CADC agrees not to purport to bind the State to any obligation not assumed herein by the State unless CADC has express written authority to do so, and then only within the strict limits of this authority.

Section 9.11    **Amendment.**  This Contract shall not be altered, changed or amended except by mutual consent of the parties in writing.

Section 9.12    **Anticipated Amendment** - It is anticipated that this contract may be amended, upon mutual agreement of both parties, to allow additional numbers of male/female, differing classification type, or higher custody level Prisoners to be placed at the facility or otherwise held at other facilities by the CADC. It is also specifically provided that, upon mutual agreement, the State may contract for additional service beds above the highest number of service beds identified in this document.

Section 9.13    **Scope of Agreement.**  This Contract, including Appendices and attached RFP Volumes 1-3, incorporates all the agreements, covenants and understandings between the parties hereto concerning the subject matter hereof, and all such covenants, agreements and understandings have been merged into this written Contract. No prior agreement or understandings, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Contract.



Section 9.14    **Anticipated Amendment for Monitoring and Support Staff**.  It is anticipated that the State may require additional oversight, monitoring, contract and support staff to

---

Contract Prison Beds; CCA/CADC               54               Florence, Arizona  ASPS #99-0001

administer this contract and the prisoners housed herein. The parties agree that, upon mutual agreement of both parties, the additional staff and costs may be added to the contract.

Section 9.15 **Format of Reports and Data.** Department of Corrections (DOC) is currently re-engineering its management, reporting and data gathering information systems. The CADC will be expected to provide electronic reports and data in a format comparable with the department's systems and formats. It will be the CADC's responsibility to create the required data files. This includes data entry and the development of any automated interfaces to the CADC's information systems or data entry software needed for this purpose.

Specifications on record layout(s), data content and format (CSV or fixed ASCII text) will be provided once they are determined by the re-engineering process. An FTP server will be available for direct transmission of ASCII data files to the DOC via the Internet. Encryption and/or file compression software capable of operation in a Windows 95 or NT platform will be provided by the DOC if determined to be needed. The DOC will also provide the CADC with the URL, UserName and Password to use for login/upload to the DOC FTP site.

Section 9.16 **Subcontracting and Assignment.** CADC may, upon notice to the State, assign the proceeds of this Contract. CADC shall not subcontract or assign any amount of the services to be performed under this Contract without the consent, guidance and prior express written approval of the State.

Section 9.17 **Existing Agreements.** Nothing in this Contract abrogates or impairs any other agreement for the confinement, rehabilitation, or treatment of prisoners now in effect between Alaska and any other state.

Section 9.18 **Last Day of Contract Agreement.** CADC agrees to extend last day of contract to midnight of final day, and to assist in the orderly transfer of prisoners.

Section 9.19 **Internal Relations.** Nothing in this agreement affects the internal relations of the parties and their respective officers, departments, agencies, or subdivisions.

Section 9.20 **Notices.** All notices, reports, billings, and correspondence will be sent certified mail, return receipt requested to:

Alaska:
Allen J. Cooper
Director of Institutions
Alaska Department of Corrections
4500 Diplomacy Drive, Suite 207

CADC:
Linda G. Cooper, Vice President of Legal Affairs
Corrections Corporation of America
(d.b.a. Central Arizona Detention Center)
10 Burton Hills Boulevard

---

Contract Prison Beds; CCA/CADC    55    Florence, Arizona  ASPS #99-0001



Anchorage, Alaska 99508-99518         Nashville, Tennessee 37215

Section 9.21  **Addresses and Signatures:**

At that time IN WITNESS WHEREOF, intending to be legally bound, the parties have caused their authorized representative to execute this Contract as of the _29th_ day of _June, 1998._

| | |
|---|---|
| State of Alaska | Corrections Corporation of America |
| Department of Corrections | d.b.a. Central Arizona Detention Center |
| Anchorage, Alaska | Pinal County, Florence, Arizona |



BY:_____          BY:_____
Bill Parker                          Doctor R. Crants
Deputy Commissioner, DOC             Chairman and CEO, CCA

DATE: _____                DATE: _____


APPROVED AS TO FORM:


BY: _____
Linda G. Cooper, Vice President of Legal Affairs
Corrections Corporation of America
10 Burton Hills Boulevard
Nashville, Tennessee 37215 CADC
d.b.a. Central Arizona Detention Center
Pinal County, Florence, Arizona

DATE:

_____

LMH/contra99/prisbcon.f99.

---

Contract Prison Beds; CCA/CADC              56              Florence, Arizona  ASPS #99-0001

APPENDIX " A "
Request for Prisoner Services

TO: CADC Correctional Facility
County Name, Arizona

RE: Prisoner Services Contract dated          , 199_

The undersigned, pursuant to the captioned contract, authorizes and requests the CADC Correctional Facility to take custody and control of the hereinafter described Prisoner pursuant to the terms of the captioned contract. The undersigned authorizes CADC Correctional Facility to take whatever steps necessary to recapture the Prisoner shall the Prisoner escape from custody. Attached are copies of his criminal history, judgment and sentence and medical history.

Name of Prisoner: _____
Birth Date: _____
Social Security No.: _____

Anticipated Arrival Date: _____
Anticipated Departure Date: _____
                              (Name of Requesting Entity)


                              Its: _____

---

Contract Prison Beds; CCA/CADC          57          Florence, Arizona  ASPS #99-0001

APPENDIX B:
Postsecondary Program Information

To be provided by CADC

Contract Prison Beds; CCA/CADC          58          Florence, Arizona  ASPS #99-0001

**APPENDIX C:**
**Vocational Program Information**

## VOCATIONAL   PROGRAMS

## BUILDING TRADES AND RESIDENTIAL REPAIR

This highly successful course is designed to prepare  Individuals for Alaska Building and Maintenance Jobs.  You can perform maintenance and alteration work, and be considered as an apprentice in the building trades field.

| COURSE NUMBER | COURSE NAME | CREDIT HOURS |
|---|---|---|
| HM 101 | Be Your Own CADC | 4 |
| HM 102 | Basic Construction & Blueprint Reading | 4 |
| HM 103 | Carpentry I | |
| HM 106 | Plumbing I | |
| HM 203 | Electrical Wiring I | |
| HM 109 | Climate Controls | 3 |
| HM 205 | Carpentry II | 3 |
| HM 206 | Plumbing II | 3 |
| HM 207 | Electrical Wiring II | 3 |
| HM 208 | Solar energy Technology | 3 |
| HM 210 | Masonry | 3 |
| HM 211 | Carpentry III | 3 |
| | | 38 |

**APPENDIX D:**
**Vocational Program Information**

## VOCATIONAL   PROGRAMS

## COMPUTERIZED INFORMATION PROCESSING

This highly successful course is designed to prepare  Individuals for Alaska Business and Office Jobs. You can perform information processing and accounting work, and be considered as a skilled worker in the business and office workers field.

| COURSE NUMBER | COURSE NAME | CREDIT HOURS |
|---|---|---|
| | Introduction to PC/DOS/Windows | |
| | Keyboarding I | |
| | Keyboarding II | |
| | Communications I | |
| | Wordperfect | |
| | Lotus 123 | |
| | Microsoft Works | |
| | Accounting I | |
| | Integrated Accounting | |
| | Employment Search Seminar | |



Contract Prison Beds; CCA/CADC                60                Florence, Arizona  ASPS #99-0001

**APPENDIX E:**
<u>List of Drugs Included in Facility Medical Care</u>

# RECOMMENDED FIRST LINE AGENTS
## SEPTEMBER 1, 1994

| <u>DRUG</u> | STRENGTH |
|---|---|
| **<u>ANTI-INFLAMMATORY/PAIN</u>** | |
| APAP-HYDROCODONE | 500/5mg |
| TYLENOL with codeine | #3 |
| ASA | 325mg |
| | EC325 |
| TORADOL Injectable | 60mg/2ml |
| APAP | 500mg |
| | 325mg |
| IBUPROFEN | 200mg |
| INDOMETHACIN | 25mg |
| | 50mg |
| NALFON | 600mg |
| NUBAIN Injectable | 20mg/ml |
| MIDRIN | |
| SALSALATE | 750mg |
| PREDNISONE | 5mg |
| | 10mg |
| MEDROL DOSE PAK | 21 x 4mg |
| DEXAMETHASONE PHOSPHATE | 4mg/ml |
| DEXAMETHASONE ACETATE | 8mg/ml |
| CLINORIL | 200mg |
| **<u>ANTIBIOTICS (EXCEPT TOPICAL)</u>** | |
| INH | 300mg |
| REFLEX | 500mg |
| PEN VEE K | 250mg |
| | 500mg |
| E.E.S. | 400mg |
| DOXYCYCLINE | 100mg |

| | |
|---|---|
| GENTAMYCIN Injectable | 80mg/2ml |
| BACTRIM DS | 160/800mg |
| FLAGYL | 500mg |

List of Drugs Included in Facility Medical Care, Page 2

| | |
|---|---|
| BICILLIN LA Injectable | 1.2 million units |
| AZT | 100mg |
| AMOXICILLIN | 250mg |
| | 500mg |
| TETRACYCLINE | 250mg |
| | 500mg |
| ROCEPHIN Injection | 1 gram |

## COUGH/COLD/ANTIHISTAMINE

| | |
|---|---|
| "COLD Caps" | |
| BECLOMETHASONE ORAL INHALER | |
| CHLORPHENIRAMINE | 4mg |
| BENADRYL | 25mg |
| GUIATUSS DM | |
| ENTEXL LA | |
| VISOUS LIDOCAINE | 2% |
| SUDAFED | 30mg |
| ATARAX | 50mg |

## ANTIEMETICS

| | |
|---|---|
| TIGAN SUPPOSITORY | 200mg |
| PHENERGAN Injectable | 50mg/ml |
| VISTARIL Injectable | 50mg/ml |
| METOCLOPRAMIDE | 10mg |

## ANORECTAL

| | |
|---|---|
| DIBUCAINE OINTMENT | |
| HYDROCORTISONE SUPPOSITORIES | 25mg |

## BRONCHODILATOR

ALBUTEROL INHALER

---

Contract Prison Beds; CCA/CADC          62          Florence, Arizona ASPS #99-0001

| | |
|---|---|
| ALBUTEROL (not time release) | 4mg |
| THEODUR | 300mg |
| EPINEPHRINE | 1/1000inj. |
| ALBUTEROL NEBULIZER | unitdose solution |

List of Drugs Included in Facility Medical Care, Page 3

## ANTIHYPERTENSION

| | |
|---|---|
| HCTZ | 25mg |
| CLONIDINE | 0.1mg |
| | 0.2mg |
| | 0.3mg |
| VERAPAMIL | 80mg |
| | 120mg |
| MAXZIDE | |
| DILTIAZEM | 30mg |
| | 60mg |
| | 90mg |
| | 120mg |
| PRAZOSIN | 5mg |
| PROPRANOLOL | all strengths |
| ALDACTONE | 25mg |
| ATENOLOL | 50mg |
| | 100mg |
| NIFEDIPINE | 10mg |
| | 20mg |

## CARDIAC

| | |
|---|---|
| TNG SL | 1/150 |
| NITROL PASTE | |
| ISORDIL TEMBIDS | 40mg |
| LASIX Injectable | 40mg |
| LASIX Tabs | 40mg |
| LANOXIN (no generic) | 0.125mg |
| | 0.25mg |

## VITAMINS

| | |
|---|---|
| FeSO4 | 325mg |
| KCL Liquid | 10mgEq |
| FOLATE | 1mg |

---

Contract Prison Beds; CCA/CADC          63          Florence, Arizona  ASPS #99-0001

MVI Tab
VITAMIN B6                                              50mg

List of Drugs Included in Facility Medical Care, Page 4

THIAMINE                                            100mg
OSCAL                                               500mg
VITAMIN K Injectable                                10mg
PRENATAL PLUS MVI


## GI

PEPTO BISMOL
IMODIUM
BISACODYL                                           2mg
MAALOX                                              5mg
KAOPECTATE
MOM
IPECAC SYRUP
CIMETIDINE (Generic Tagamet)                        300mg
                                                    400mg
                                                    800mg


## MUSCLE RELAXANTS

ROBAXIN                                             750mg
BACLOFEN                                            10mg


## HORMONES

LEVOTHYROXINE                                       all strengths
GENERIC ORTHO NOVUM                                 1/35
                                                    1/50
HUMAN INSULIN                                       all types
GLYBURIDE (Generic Micronase)                       5mg
PREMARIN                                            1.25mg
PROVERA (Generic)                                   10mg
ESTRACE                                             2mg (scored)

---

Contract Prison Beds; CCA/CADC              64          Florence, Arizona  ASPS #99-0001

## TOPICAL

PODOPHYLLIN Solution
SIVADENE Cream


List of Drugs Included in Facility Medical Care, Page 5


MYCOLOG II Cream (Nystatin-Triamcinolone)
POLYSPORIN (Ointment)
MICONAZOLE Cream
NYSTATIN Cream
TRIAMCINOLONE (Cream/Lotion)                0.025%
                                            0.10%
HYDROCORTISONE Cream (OTC)                  1%
SELENIUM SULIFIDE Lotion/Shampoo            2.5%
KWELL Shampoo
BENZOYL PEROXIDE WASH                       5%
                                            10%
TOLNAFTATE Cream

## PSYCHOTROPICS

*Exclude Serotonin reuptake inhibitors and Buspar without
nonformulary request form.
Otherwise as per local psychiatrist.

## OTIC

CORTISPORIN OTIC SUSPENSION
AURALGAM Drops
DEBROX Drops
ACETIC ACID (VOSOL-HC)

## OPTHALMIC

PILOCARPINE Drops                           4%
TIMOPTIC Drops
GENTAMYCIN Drops
GENTAMYCIN Ointment
SULAMYD Ointment

---

SULAMYD Drops                          10%
NAPHCON A Drops
TETRACAINE Drops
ARTIFICIAL Tears


List of Drugs Included in Facility Medical Care, Page 6


## VACCINES

dT                                     Adult
ENGERIX B                              20meg
PRULMMINE
FLU VACCINE

## ANTICONVULSANTS

PHENOBARBITAL                          30mg
                                       60mg
   Elixir
   Injection               130mg
VILPROIC ACID (Depakene)               250mg
DILANTIN (No Generics)                 100mg
CARBAMAZEPINE (Generic Tegretol)       200mg
ATIVAN Injectable                      2mg

## MISCELLANEOUS

PYRIDIUM                               200mg
COUMADIN                               All Strengths
PPD Solution-Tubersol
CANDIDA SKIN TEST Solution
MUMPS SKIN TEST Solution
PROBENECID                             500mg
DITROPAN                               5mg
ALLOPURINOL                            300mg
COGENTIN                               All Strengths

---

Contract Prison Beds; CCA/CADC          66          Florence, Arizona  ASPS #99-0001

**APPENDIX F:**
**Liquidated Damages Calculation Worksheet**
Liquidated damages will be calculated in accordance with the following formula:
$$V \times B \times \$25.00 = \text{Amount of Daily Damages}$$
WHEN:     V = Relative value of Service Area
          B = Relative value of the Breach

Service Area 1 - Value = 5:  Prisoner Classification, Custody and Movement, Access to Courts, Disciplinary Procedures, Prisoner Relations, Sentence Reduction Credits, Sentence Computation, Prisoner Records:

**Service Area 1 - Value = 5:**

| CADC Breach | B |
|---|---|
| Failure to staff | 5 |
| Failure to Document | 4 |
| Failure to Report | 3 |
| Failure to Comply with Other Applicable Standards | 5 |

Service Area 2 - Value = 4:  General Administration, Personal and Training, Security and Control, Use of Force, Health/Medical/Mental Health/Dental, Prisoner Work and Education, Transportation, Prisoner Drug Testing:

**Service Area 2 - Value = 4:**

| CADC Breach | B |
|---|---|
| Failure to staff | 5 |
| Failure to Document | 3 |
| Failure to Report | 2 |
| Failure to Comply with Other Applicable Standards | 5 |

Service Area 3 - Value = 3:  Equipment, Supplies, and Perishables, Sanitation and Hygiene, Facility Management, Maintenance, and Utilities:

**Service Area 3 - Value = 3:**

| CADC Breach | B |
|---|---|
| Failure to staff | 4 |
| Failure to Document | 2 |
| Failure to Report | 1 |
| Failure to Comply with Other Applicable Standards | 4 |

Service Area 4 - Value = 2:  Personal Property, Visitation, Food Service, Laundry and Clothing, Recreation, Library, Commissary, Religious Service, Volunteer Services, Released Prisoners. Telephone and Correspondence, Prisoner Trust Fund, Community Relations, and other requirements of the Standards:

**Service Area 4 - Value = 2:**

| CADC Breach | B |
|---|---|
| Failure to staff | 4 |
| Failure to Document | 1 |
| Failure to Report | 1 |
| Failure to Comply with Other Applicable Standards | 4 |

---

Contract Prison Beds; CCA/CADC            67            Florence, Arizona  ASPS #99-0001

**APPENDIX G:**
**Time Line Summary**

-- AGREED UPON PROGRAM IMPLEMENTATION REQUIREMENTS

a) CADC Agrees that following programs will be on line immediately:

1)    Lifeskills;
2)    Counseling;
3)    Substance Abuse program;
4)    Exercise and Outdoor recreation;
5)    Leisure time (basic recreational area, games, TV, etc.);
6)    Hobby Craft Activities;
7)    Basic work opportunities (jobs for minimum 50% Prisoners immediately);
8)    GED /ABE programming (available immediately, estimate 10% of prisoners);
9)    Religious Programming; and
10)   Pre-release Assessments, Classification and Parole Planning.

b) CADC Agrees that the following additions to programs will be made as stated below:

1)    College and full ABE educational program (estimated use: 25% of prisoners) (On line within 60 days);
2)    Full vocational skills program (On line within 60 days);  and
3)    Work project opportunities (or vocational skills) for 90% of Prisoners. (On line in 60 days, small percentage of jobs may take up to 6 months.)

LMH/contrx99/prisbcon.f99.

---

Contract Prison Beds; CCA/CADC          68          Florence, Arizona  ASPS #99-0001

# MEMORANDUM

**STATE OF ALASKA**
**DEPARTMENT OF CORRECTIONS**
*Central Compliance Office*

TO:   All Compliance Officers

DATE:  January 13, 1993

THRU:  Larry A. McKinstry
       Compliance, Adjudications,
       & Legal Affairs Officer

FILE:  93.003

FROM:  J. Christian Lyou
       Central Compliance Officer
       Anchorage Central Office

SUBJECT:  Alaska Court Review Publicati...

It has been determined that this office has given wrong advice regarding the <u>Alaska Court Review</u> publication.

Although this publication by name is not listed as one of the FSA required documents for institutional law libraries it has come to our attention that this had replaced the <u>Alaska Case Notes</u> which is required.

I apologize for any confusion this may have caused. Please ensure that your institution renews your next order for this publication. If you have any questions regarding this, please call.

JCL/jcl

cc:  File