IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
_____
JOSEPH MILLER,        )
                      )
        Plaintiff,    )
                      )
    V.                )
                      )
CORRECTIONS           )
CORPORATION OF        )
AMERICA,              )
        Defendant.    )   Case No.3:03-cv-00266-JWS Civil (JWS)
_____)
```

**Plaintiff's Reply to Defendants**
<u>**Motion for Summary Judgment**</u>

  /s/ Joe. P. Josephson_____
JOE P. JOSEPHSON
Attorney for Joseph Miller
Josephson & Associates P.C.
912 West Sixth Avenue,
Anchorage, Alaska 99501
Tel: (907) 276-0151
Fax: (907) 276- 0155
E-mail: jjosephson@aol.com
Alaska Bar No.: 6102018

**CERTIFICATE OF SERVICE**
I hereby swear and affirm that on 6/24/08,
I caused a true and correct copy of the
Foregoing "Reply to Defendant's Motion
for Summary Judgment" to be delivered via
electronic service to:
Daniel T. Quinn
Richmond & Quinn, dquinn@richmondquinn.com
and to
Daniel P. Struck, Esq of Jones,
Skelton & Hochuli, PLC, dstruck@jshfirm.com.


/s/ Joe P. Josephson
Joe P. Josephson

I.  **Background.**

From prior briefing, the Court is aware of the factual background to this case. It is unquestioned that the plaintiff, Joseph Miller ("Miller"), was seriously injured on October 8, 2001, when he sustained neurological injuries to his lingual nerve during oral surgery. The procedure caused Miller to suffer a serious and permanent speech impediment.[1]

In 1998, Corrections Corporation of America ("CCA") entered into a contract to house State of Alaska inmates in its Arizona facilities. The contract was renewed on July 1, 2001.

The contract, attached to the CCA motion for summary judgment as "Exhibit 1", states that all prisoners are entitled to necessary medical, dental and mental health services comparable in quality to those available to the general public.[2] CCA agreed to provide medical services and a dental program in accordance with standards specified under Adult Correctional Institutions, Third Edition, and consistent with federal and state and local laws and regulations.[3] The contract refers to the Cleary Final Settlement Agreement ("Cleary FSA").[4]

CCA argues that its contract with the State of Alaska did not contain *in haec verba* the detailed, four-page specifications for medical care set out in the Cleary FSA. Motion at 4-5.

---

[1]   See CCA Separate Statement of Facts, p. 4, para. 9.
[2]   Exhibit 1 at p. 26.
[3]   *Id*. at p. 25.

2

PDF created with pdfFactory Pro trial version www.pdffactory.com

II. **Argument.**

    A. CCA'S RELIANCE ON ALASKA STATUTE 09.19.200 IS MISPLACED.

CCA's first argument is that Alaska Statute 09.19.200 prohibits

> prospective relief in a civil action with respect to correctional facility conditions unless the court finds, among other things, that the plaintiff has proven a violation of state or federal right.

"Prospective relief" means, at most, relief other than compensatory money damages. **See**, *e.g.*, *Carruthers v. Jenne*, 209 F.Supp.2d 1294, 1297, (D.C.S.D.Fla. 2002)[analyzing 18 USC sec. 3626(g)(9) which defines "prospective relief" under a statute, the Prison Litigation Reform Act of 1995, adopted by Congress to truncate the federal judiciary's involvement in prison administration]; *Gilmore v. People of the State of California*, 220 F.3d 987, 999-1000 (9th Cir. 2000).

Presumably, the Alaska Legislature, in enacting Alaska Statute 09.19.200 in 1999, wanted, like Congress, to truncate judicial involvement in prison administration, and even chose congressional terminology in doing so. But assuming, *arguendo*, that Alaska Statute 09.19.200 is valid under separation of powers analysis, it has nothing at all to do with Miller's quest for compensatory damages; Miller is not seeking "prospective relief" in this case. Finally, if Miller were seeking

---

[4] See CCA's Motion for Summary Judgment ("Motion") at 4.

3

PDF created with pdfFactory Pro trial version www.pdffactory.com

"prospective relief", the cited statute would not apply because, as discussed below, he is invoking a violation of a state right.

### B. CCA'S CONTENTION THAT MILLER IS NOT A THIRD PARTY BENEFICIARY SHOULD BE REJECTED.

1. *The Several Alaska Cases Cited by CCA Are Inapposite.*

Next, CCA contends that Miller is not a third party beneficiary, since neither CCA nor the State of Alaska intended him or other prisoners to be so.[5]

CCA relies on certain Alaska cases, including *Howell v. Ketchikan Pulp Company*, 943 P.2d 1205, 1207 (Alaska 1997). Howell, a pipefitter who was employed by an independent contractor, had been repairing the premises owner's boiler when another boiler exploded, causing him injuries. The Supreme Court held that Howell was not a third party beneficiary of the contractor's contract with the premises owner.

*Howell* is distinguishable from Miller's case for at least two reasons. First, the contract in *Howell* contained express language under which the contractor (Howell's employer) agreed to indemnify and defend the premises owner from liability for claims for personal injury. CCA has pointed to no such indemnification by the state. Second, in contrast to the case at bar, the premises owner in *Howell* had no duty to render <u>any</u> performance or service to the plaintiff, and never did so.

---

[5]  Motion at pp. 8-11.

4

PDF created with pdfFactory Pro trial version www.pdffactory.com

In *Kodiak Electric Association v. Delaval Turbine, Inc.*, 694 P.2d 150 (Alaska 1984), a second Alaska case cited by CCA, the issue of third party beneficiary came up in a very different context from the circumstances in the case at bar. There, plaintiff bought a used engine and generator from Delaval, a dealer in used equipment. The generator repair work was performed at DeLaval's request by Westinghouse. Two years later, the unit was finally delivered to the plaintiff. After the unit proved to be defective, and Kodiak Electric sued, the Supreme Court held that Westinghouse's duty was owed only to DeLaval, not Kodiak Electric. *Id*. at 154.

Again, as in *Howell*, no performance or service was owed to the plaintiff by the defendant.

CCA also cites *State v. Osborne*, 607 P.2d 369 (Alaska 1980). There, the state brought an action against a home buyer on behalf of an unpaid worker who had been employed by a builder who contracted with the home buyer to erect a residence, and who had failed both to pay his employees and to finish the job.

The Supreme Court opinion points out that the home buyer had no duty or intent to pay the worker:

> Their intention was to pay a specified amount for a completed house regardless of who was paid or for what reason.[6]

The Court, in its analysis of the third party beneficiary

5

PDF created with pdfFactory Pro trial version www.pdffactory.com

issue, also observed that the home buyer owed nothing because a suit by a third party beneficiary is a derivative action, and the home builder had failed to perform his part of the bargain.[7]

> 2. *A Significant Factor is that CCA Promised to Deliver Services Directly to Prisoners, and Not to the Promisee, the State of Alaska.*

A significant factor is whether the promisor-defendant was to render its promised performance to the beneficiary rather than to the promisee.  **See** *Buchman Plumbing Co. v. Regents of the University of Minnesota*, 215 N.W.2d 479(Minn.1974).  There, the Supreme Court of Minnesota recalled that in an earlier case, it had adopted the definition of third-party beneficiaries found in the <u>Restatement of Contracts</u>, sec. 133.  While acknowledging that the "primary test used in Minnesota in determining whether a party may sue as a third -party beneficiary. . .is the 'intent to benefit' test", the Minnesota court stressed that

> (t)his intent must be found in the contract as
>  read in light of all the surrounding circumstances.

*Id*. at 483.

And,

> In determining whether the necessary intent to
> benefit is present, many courts have inquired:
> to whom is performance to be rendered?  *Carson
> Pirie Scott & co. v. Parrett,* 178 N.E. 498
> (Ill. 1931); *Fidelity & Deposit Co. v. Rainer*,
> 125 So. 55 (Ala. 1929)(treatise citations omitted).
> If, by the terms of the contract performance is

---

[6] 607 P.2d at 371, n. 3.
[7] *Id.* at 371.

6

PDF created with pdfFactory Pro trial version www.pdffactory.com

> directly rendered to a third party, he is intended
> by the promisee to be benefitted.  Otherwise, if the
> performance is directly rendered to the promisee,
> the third party who also may be benefited is an
> incidental beneficiary with no right of action.
> (Treatise Citation omitted).

*Id*. at 484.

For creditor beneficiary status, the Minnesota court, citing *Northern Nat. Bank v. Northern Minn. Nat. Bank*, 70 N.W. 2d 118, 123 (Minn. 1955) added:

> Minnesota also appears to require that the promisor's
> performance discharge a duty owed by the promisee to
> the third party.

*Id*.

That the obligor's performance is to be rendered directly to the beneficiary is important in Alaska as well as elsewhere:

> As a general rule, if the promised performance is
> rendered directly to the creditor, "the intent
> to benefit the third party will be clearly
> manifested."

*Rathke v. Corrections Corp. of America*, 153 P.3d 503, 310 (Alaska 2007), quoting 13 Richard A. Lord. <u>Williston on Contracts</u>, sec. 37:8 at 70 (4th ed. 2000).  Thus, a defendant's denial of its intention does not dispose of the claim where the promised performance is rendered directly to the third party.[8]

Especially weak is CCA's claim that "further evidence of intent" is contained in an amendment to the contract "to expressly state the parties' intent that prisoners not be

7

PDF created with pdfFactory Pro trial version www.pdffactory.com

designated third-party beneficiaries." Motion at 9.

CCA does not indicate the date of the amendment, nor is the date provided in the affidavit of Assistant Attorney General Bodick.[9] It can be reasoned that parties do not amend contracts for no purpose. At the very least, the amendment may just as well be understood as constituting a substantive change in the contract as it can be seen as just reflecting the parties' original deal. The motive for the amendment may have been an after-the-fact reaction to *Rathke* and/or an after-the-fact reaction to Miller's claim.

3. *CCA's "Public Policy Reasons" Are Unpersuasive*.

The position advocated by CCA here is outrageous, especially so because CCA argues that "there are strong public policy reasons for denying Plaintiff's ability to sue under the correctional services contract that provides for his incarceration." Motion for Summary Judgment at 10.

First, when CCA contends at page 10 that

> (h)aving committed a serious violation of
> criminal law, plaintiff should not be able
> to assert that any aspect of his incarceration
> was intended for his benefit,

it both ignores and defies the Constitution of Alaska, Article I, Section 12. **See** *Ferguson v. State, Department of Corrections*, 816 P.2d 134 (Alaska 1991); *Goodlataw v. State*,

---

[8] Moreover, the Supreme Court has stated that ordinarily only the motives of the promisee are relevant, citing 4 A.Corbin, Corbin on Contracts, sec. 776 (1951). *State v. Osborne, supra*, at 371.

8

PDF created with pdfFactory Pro trial version www.pdffactory.com

*Department of Health & Social Services*, 698 P.2d 1190 (Alaska 1985 [asserting the right of prisoners to rehabilitation while incarcerated, but not after release].

It is nothing less than scary to discover that the private contractor housing Alaska prisoners seems to be unaware of a unique feature of the Alaska constitution applying "the principle of reformation in the treatment of offenders" in Article I, Section 12.

In addition, to adopt the defendant's public policy argument would be to create a conundrum: prisoners housed by the Department of Corrections would have rights under *Cleary*, but prisoners housed by CCA do not, and thus the quiver of rights which a prisoner may assert will depend on the accident of location: two prisoners with the same history and the same medical issues are to be treated differently based upon whether they are housed directly by the Department of Corrections or by CCA under contract.[10]

That proposition, in turn, raises another question, *i.e.*, whether the state can delegate its duties to the private contractor (CCA) if CCA refuses to be responsible for the performances owed by the state to its prisoners.

---

[9] Defendant's Exhibit 3.
[10] There is a solution to the conundrum, however: it could reasonably be held, despite CCA's resistance, that the detailed language in the contract between CCA and the State incorporated all of the Cleary FSA standards by reference, with the result that prisoners are to receive equal access to health care and equal standards for health care delivery regardless of their location.

9

PDF created with pdfFactory Pro trial version www.pdffactory.com

Miller's answer to that question is "no", under <u>Restatement, Second, of Contracts</u>, section 318, because an obligor cannot properly delegate the performance of its duty to another if the delegation is contrary to public policy. Miller had a substantial interest in having CCA perform or control the acts promised to him under *Cleary*.

In short, there are "strong public policy reasons" for a solution which demands that CCA care for Alaska prisoners under the same guiding principles as were enunciated in the *Cleary* FSA. It is bad enough when an Alaska prisoner is dispatched to Arizona, away from family and friends; it is even worse when the prisoner is housed by a corporation which believes that its discretion over the prisoner's treatment is greater than the discretion enjoyed by the government itself.

> *4. The CCA Brief Fails to Adequately Deal with the Alaska Supreme Court Decision in Rathke v. CCA.*

In *Rathke v. Corrections Corporation of America*, 153 P.3d 303 (Alaska 2007), the Supreme Court of Alaska held that the plaintiff, a prisoner, was an intended third-party beneficiary of the contract between the state and CCA. The Supreme Court went further, and referring to the previous decision of the United States District Court granting CCA summary judgment against Miller in the case at bar, went out of its way to say:

> To the extent that Miller is inconsistent with
> our analysis of the third-party beneficiary

10

PDF created with pdfFactory Pro trial version www.pdffactory.com

> question presented by the Cleary settlement
> agreement and the state's contract with CCA,
> we disagree with the decision.

153 P.3d at 311, n. 33.

Obviously, the question arises here whether the Supreme Court of Alaska would likely treat Miller as a third party beneficiary of the contract between the State and CCA. CCA appears to say that it would not, while Miller says it would.

CCA's first distinction of *Rathke* is that while Rathke argued that he was an intended third-party beneficiary "by virtue of the Cleary FSA and its incorporation into the state's contract with CCA", Miller has not. The first answer is that Miller's complaint, in paragraph 4, alleged:

> Although the Commissioner of Corrections may
> contract with a private corporation, under
> certain circumstances, for the custody, care
> and discipline of persons held under authority
> of the laws of Alaska, the contractor must
> fulfill the constitutional and statutory
> obligation of the government to "maintain
> (prisoner) health [A.S. 33.30.011(1)(B)' and
> to provide "medical services for prisoners in
> correctional facilities or who are committed by a
> court to the custody of the commissioner. . .".
> [A.S. 33.30.011(A)].

The argument that Rathke "affirmatively alleged that the breach of the contract violated his rights under the Alaska State Constitution" and Miller did not, is an unfair parsing of Miller's complaint and subsequent pleadings. The argument that "plaintiff has never made a single assertion that his rights or

11

PDF created with pdfFactory Pro trial version www.pdffactory.com

protection under the Cleary FSA or the state constitution" is clearly wrong.  **See**, *e.g.*, Transcript of Proceedings Oral Argument on Defendant's Motion for Summary Judgment, June 17, 2005, at page 4 (Attachment 1); **see also** Appellant's Reply Brief to the Ninth Circuit Court of Appeals, at page 1 - 3 (Attachment 2).  The Cleary FSA was referred to by CCA in its Defendant's Separate Statement of Facts in Support of Motion for Summary Judgment filed on October 29, 2004, and materials from *Cleary et al. v. Smith*, 3AN-81-5274, were actually attached to that document.

In *Rathke*, the Supreme Court observed:

> Finally, neither CCA nor its employees has alleged that they would be prejudiced by our consideration of Rathke's constitutional arguments.

153 P.3d at 309.

Here, too, CCA can make no credible claim that it could be prejudiced by the consideration of Miller's claims under the Cleary FSA or the state constitution, even assuming, *arguendo*, that Miller has not previously raised such claims.

The second answer is that Miller makes that very argument now, in opposing summary judgment.

Finally, Miller will move under Rule 15, F. R. Civ. Pro., to amend his complaint, and will ask the court to grant that motion under the principle that leave should be freely given and no prejudice to CCA would be imposed by an order granting

12

PDF created with pdfFactory Pro trial version www.pdffactory.com

amendment.

C.    *Under Summary Judgment Standards, It Cannot Be Concluded that CCA's Breach Is Not the Cause of Miller's Injuries.*

As Miller noted earlier (Docket 51), it is the moving party which has the burden of showing the absence of any genuine issue of material fact, viewing the record in the light most favorable to the opposing party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Adickes v. SH. Kress & Co.*, 398 U.S. 144, 147 (1970). The burden on the non-moving party is not heavy: he must simply show specific facts that present a genuine issue worthy of trial. *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370 (9th Cir. 1978).

Right after plaintiff Miller suffered an inability to speak and to be understood, following the October, 2001, oral surgery, he put in an estimated 40 to 50 "cop-outs" requesting medical attention. Affidavit of Joseph Miller, Attachment 3, June 23, 2008. This affidavit supplements exhibits previously marked and presented as Exhibits D, E and F to the plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment at Docket 51. According to these exhibits, viewed in the light most favorable to Miller, (1) CCA was different to his plight and waited an unreasonably long time to allow him to see anyone; and (2) earlier speech therapy would have benefited Miller in his struggle to regain the power of speech. In that regard,

13

PDF created with pdfFactory Pro trial version www.pdffactory.com

CCA's statement that "both Plaintiff's expert and Defednant's expert agree that no additional speech therapy would have assisted Plaintiff in recovering from the nerve injuries" he sustained during the oral surgery is not an accurate reflection of the view expressed by Ms. Batchelder or Ms. Gose.

D. *Summary Judgment Should Not Be Granted On the Theory That Plaintiff Cannot Present Sufficient Evidence to Calculate the Amount of the Loss.*

It cannot be said that at trial Miller could not provide the jury with "a reasonable basis" to fix damages. **See** *City of Palmer v. Anderson*, 603 P.2d 495, 500 (Alaska 1979). It is sufficient if the damages are not based "on speculation" and as long as there is "some competent evidence as to the amount of damages." *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 636 (Alaska 1996). At trial, Miller could be expected to testify about his previous use of speech as a church leader and baritone, and the effects of the speech detriment upon his life and lifestyle now. Suitable instructions from the bench can prevent the jury from rendering an award based "on speculation". In the unlikely event that CCA becomes concerned about that possibility, its objections can be heard at the time.

PDF created with pdfFactory Pro trial version www.pdffactory.com

## **Conclusion**

The motion for summary judgment should be DENIED.

*Respectfully Submitted:*

_/s/ Joe P. Josephson_____
Joe P. Josephson
Attorney for Plaintiff
912 W. 6th Avenue
Anchorage, Alaska  99501
Tel. (907) 276-0151
Facsimile (907) 276-0155
Alaska Bar Number 6102018

15

PDF created with pdfFactory Pro trial version www.pdffactory.com

14

16

PDF created with pdfFactory Pro trial version www.pdffactory.com