COPY

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| JOSEPH MILLER, ) | Case No. A03-0266-CV (JWS) |
| ) | |
| Plaintiff, ) | Anchorage, Alaska |
| ) | Friday, June 17, 2005 |
| vs. ) | 8:00 a.m. |
| ) | |
| CORRECTIONS CORP OF AMERICA, ) | ORAL ARGUMENT ON DEFENDANT'S |
| ) | MOTION FOR SUMMARY JUDGMENT |
| Defendant. ) | |

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

    JOE JOSEPHSON
    Josephson & Associates PC
    912 West 6th Avenue
    Anchorage, Alaska 99501
    (907) 276-0151

For the Defendant:
  (Telephonic)

    DANIEL STRUCK
    Jones Skelton, et al.
    2901 N. Central Avenue, Suite 800
    Phoenix, Arizona 85012
    (602) 263-7323

Court Recorder:

    ELISA SINGLETON
    U.S. District Court
    222 West 7th Avenue, #4
    Anchorage, Alaska 99513
    (907) 677-6105

Transcription Service:

    TAMSCRIPTS
    P.O. Box 781001
    Orlando, Florida 32878
    (407) 275-2737

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Attachment 1 Page 1

4

1    With -- with regard to the third-party beneficiary

2  claim, I think there's a background that needs to be weighed in

3  this matter.   There is a right to medical care in Alaska law,

4  and the right to care is traceable back to the Alaska Supreme

5  Court case, among others, in Rust against State at 582 P.2d 134

6  (Alaska 1978).   And it's also contained in AS 33.30.011.   And

7  there's an article in the contract -- I believe it's part 4.8,

8  if I'm right -- which is in great detail about the medical

9  rights of prisoners under CCA's control in Arizona.

10    So there is a lot of -- there's -- there's a question

11  here of the right of the prisoner to medical care, which has a

12  long Alaska history and a long constitutional history.   And

13  there's a specific and lengthy contractual position governing

14  it.   And incidentally, I noticed this morning as I prepared to

15  come here that the contract with this defendant is fully

16  reimbursable for medical costs.   I mean, whatever -- whatever

17  CCA would have spent on behalf of Mr. Miller would be

18  reimbursed by the State of Alaska.   I think the importance of

19  that, I'll come to in just a second.

20    Now under the Restatement -- Your Honor cited one

21  section of the Restatement and Mr. Struck correctly cited

22  another, I think in a footnote, which is Restatement, §313.

23  That deals with contracts between the government and a

24  promisor.   And under 313(2)(a), it is clear that there doesn't

25  have to be -- to create a third-party beneficiary, there does

Attachment 1  Page 2

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOSEPH MILLER,                    )
                                  ) CA No. 05-35754
        Plaintiff/Appellant,      ) DC No. A03-0266 CV (JWS)
                                  ) Alaska (Anchorage)
        V.                        )
                                  )
CORRECTIONS CORPORATION           )
OF AMERICA,                       )
                                  )
        Defendant/Appellee.       )
_____)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
FOR THE DISTRICT OF ALASKA,
THE HONORABLE JOHN W. SEDWICK

**APPELLANT'S REPLY BRIEF**

JOE P. JOSEPHSON (6102018)
JOSEPHSON AND ASSOCIATES
912 West 6th Avenue
Anchorage, AK 99501
(907)276-0151

Attorney for the Appellant
Joseph Miller

Attachment 2 Page 1

## ARGUMENT

### I.  CCA's View of Its Obligations to Prisoners is Too Attenuated.

At page 16 of its Brief, CCA contends that the only purposes of Joseph Miller's incarceration was to "benefit the public by isolating him from society, deterring future misconduct, and obtaining retribution."

This is a distressing and surprising statement about the purposes of incarceration on behalf of a government contractor which quarters prisoners for profit.

After all, the right of prisoners to medical care is guaranteed by the Eighth Amendment to the Constitution of the United States. *Estelle v. Gamble*, 429 U.S. 97, S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle*, the Supreme Court of the United States said:

> We . . . conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain', *Gregg v. Georgia*, 428 U.S. 153, 182-83, 96 S.Ct. 2909, 49 L.Ed.2d 859, proscribed by the Eighth amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.

429 U.S. at 104, 97 S.Ct. at 291, 50 L.Ed.2d at 260.

Attachment 2  Page 2

In *Rust v. State*, 582 P.2d 134 (Alaska 1978),[1] the Supreme Court of Alaska quoted the foregoing language from *Estelle*, and held that the appellant-prisoner (Rust) had a right to receive treatment for his dyslexic condition. The Court added that a jailer's duty to provide health care when a prisoner's symptoms evidence a serious injury or disease arises if the potential for harm by reason of delay or denial of care could be substantial, using criteria that apply under circumstances in which a reasonable person would seek medical care.    *Id.* at 143, n. 34.   A reasonable person, who loses the ability to enunciate words after oral surgery would certainly seek care, if free to do so.

Furthermore, the Alaska Commissioner of Corrections has a statutory duty to "maintain health" amongst the prison population.  AS 33.30.011(1)(B).    He must also

> provide necessary medical services for prisoners in correctional
> facilities or who are committed by a court to the custody of the
> Commissioner.

AS 33.30.011(4)(A).

Thus, the Commissioner's duty extends to Alaska prisoners housed by CCA in Arizona.

Finally, CCA appears to be unaware that the public policy considerations supporting Miller's right to adequate and necessary medical services has a state, as

---

[1]  Modified, on other grounds at *Rust v. State*, 584 P.2d 38 (Alaska 1978).

2

Attachment 2  Page 3

well as a federal, constitutional basis. Article I, section 12, of the Constitution of

Alaska states:

> . . . Criminal administration shall be based upon the following:
> the need for protecting the public, community condemnation of
> the offender, the rights of victims of crimes, restitution from the
> offender, and the principle of reformation.

If prisoners' medical needs are disregarded, the goal of reformation is undermined.

II. The Public Policy Considerations Redound in Miller's Favor,
    Not CCA's.

CCA's brief contends that "public policy supports the district court's
ruling." Brief at 16.

CCA is mistaken. Allowing Miller to go forward would support the explicit public

policy which demands adequate and necessary medical services for Alaska's

prisoners. As just stated, Alaska's constitutional emphasis on reformation is

undermined, if prisoners' medical conditions are neglected, or, as Miller contends

here, disregarded, in the quoted language of *Estelle, supra,*

with "deliberate indifference".

It ought to have been obvious to CCA's personnel that the man they knew

before the oral surgery was not the man who emerged from the surgery. A man,

formerly articulate, could not be readily understood when speaking, and he

suffered severe pain. But CCA did not even seek professional advice at the time, to

determine whether Miller had an injury whose effects were curable or which might

3

Attachment 2 Page 4

## Affidavit of Joseph Miller

United States of America      )
                             ) ss.
State of Alaska

Joseph Miller, being first duly sworn, deposes and says:

1. Beginning right after the oral surgery procedure (October, 2001)  affected my ability to speak and to be understood, I put in many "cop-outs" to CCA, requesting medical help.  I estimate that the total number of cop-outs was 40 to 50 in number.

2. It was not until approximately a year later that I finally got some attention, when I saw Ms. Goetz at St. Mary's Hospital in Tucson.

3. I got out of prison in August, 2003.  I first had contact with Ms. Batchelder in December, 2003, in Anchorage, more than two years after the oral surgery.  On information and belief, the State of Alaska paid for that contact and for subsequent treatments.

DATED at Anchorage, Alaska, this 2⁴ day of June, 2008.

_____
Joseph Miller

SUBSCRIBED and sworn to before me, a Notary Public in and for Alaska, this 24 day of June, 2008.

_____
My commission expires: 2-7-2010

Attachment 3